814 F.2d 1087
 125 L.R.R.M. (BNA) 2032, 55 USLW 2598,
106 Lab.Cas. P 12,326
 William DUNLEAVY, Plaintiff-Appellant,
v.
LOCAL 1617, UNITED STEELWORKERS OF AMERICA; Thomas Sikora;
Paul Vagnarelli, Jr.; Patrick Prologo; Alfred
Yannerella; United Steelworkers of
America, Defendants-Appellees.
 No. 85-3913.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 4, 1986.
Decided March 26, 1987.
 
 Theodore E. Meckler, Peter A. Joy (argued), Cleveland, Ohio, for plaintiff-appellant.
 Paul Whitehead, United Steelworkers of America AFL-CIO-CLO, Pittsburgh, Pa., Walter Alan Kamiat, Michael H. Gottesman (argued), Bredhoff & Kaiser, Washington, D.C., for defendants-appellees.
 Before JONES, Circuit Judge; and CELEBREZZE and PECK, Senior Circuit Judges.
 JOHN W. PECK, Senior Circuit Judge.
 
 
 1
 William Dunleavy, a member of the United Steelworkers of America Local and International Union since 1948, was elected in 1976 to the office of recording secretary, ostensibly for a two-year term. During Dunleavy's term of office, the Local Union alleged that he had violated provisions of the International Union Constitution and Local Union By-Laws. After a hearing, which Dunleavy claimed was improperly conducted, the Local's trial committee recommended on October 8, 1977 that Dunleavy be expelled from office and suspended from holding elective office in the Local for a period of five years. The Local Union's membership adopted the committee's recommendation.
 
 
 2
 Dunleavy appealed the Local's disciplinary action to the Executive Board of the International Union. In March of 1978 the Executive Board affirmed the Local's discipline but modified the ban on holding office from five years to three. Dunleavy appealed the Executive Board's decision to the International Convention, which denied the appeal on October 5, 1978.
 
 
 3
 Thereafter, Dunleavy filed his complaint in federal court for the Northern District of Ohio in March of 1979, approximately five and one half months after the decision of the Convention but almost a year after the Executive Board had affirmed the disciplinary action. His complaint alleged violations of Title I of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. Sec. 411 et seq., including claims that he had been denied a full and fair hearing within the Union, 29 U.S.C. Secs. 411(a)(5) and 412, and that he had been disciplined by the Union in retaliation for his political stances, 29 U.S.C. Sec. 411(a)(1) and (2). Dunleavy sought temporary and permanent injunctive relief as well as damages and attorneys' fees.
 
 
 4
 The defendant Union filed a motion to dismiss for lack of jurisdiction, alleging that Dunleavy's complaint raised matters encompassed by Title IV of the LMRDA, 29 U.S.C. Sec. 481 et seq., over which exclusive jurisdiction is vested in the Secretary of Labor, rather than matters encompassed by Title I of the LMRDA, over which the district court had jurisdiction. In March, 1979 a hearing was held to consider the Union's motion and Dunleavy's motion for a temporary restraining order. The motion to dismiss was denied. A ruling on the restraining order was reserved and the issue was resolved by the parties: Dunleavy was permitted to run for the office of trustee of the Local Union. He was elected trustee in April, 1979 and served in that capacity. After the court denied cross-motions for summary judgment in 1981, there was no activity docketed in this case until June, 1985 when the case was set for final pre-trial on September 17 and for trial on September 23, 1985. On September 12, 1985 the Union filed a motion to amend its answer and filed a second motion for summary judgment, alleging for the first time that this action was barred by the statute of limitations. The district court granted the Union's motion to amend and the Union's motion for summary judgment, holding that the applicable statute of limitations was the six-month period borrowed from Section 10(b) of the National Labor Relations Act; that the cause of action accrued against the Local Union when the membership adopted the trial committee's recommendation and accrued against the International Union when the International Executive Board made its decision; and, that there was no basis to toll the running of the statute.
 
 
 5
 This appeal focuses on whether or not plaintiff Dunleavy's claim should have been equitably tolled while he was pursuing internal union remedies set out in the Union Constitution. For the reasons stated below, we find that the plaintiff's claim should have been equitably tolled up to the time a decision was announced by the International Convention and, therefore, was timely.
 
 
 6
 It is first necessary to consider the appropriate time limitation that should be applied to this case.[1] We find that the Sixth Circuit has settled the applicability of the six-month statute of limitations to claims by union members against the union under the LMRDA in Adkins v. Int'l Elec., Radio & Mach. Workers, 769 F.2d 330, 334-35 (6th Cir.1985). The court in Adkins was guided by the Supreme Court's reasoning in DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 158-63, 103 S.Ct. 2281, 2287-89, 76 L.Ed.2d 476 (1983), which determined that hybrid section 301/unfair representation claims are subject to the six-month statute of limitations established for unfair labor practice claims under section 10(b) of the National Labor Relations Act, 29 U.S.C. Sec. 160(b). The court in Adkins, 748 F.2d at 334-35, stated that the same factors that influenced the DelCostello Court's choice in using the six-month period in the hybrid Section 301/unfair representation case before it were relevant to all unfair representation claims, as well as to the cause of action then before it under the LMRDA. Adkins held that the factors such as: "the close similarity of 'all breaches of a union's duty of fair representation' to unfair labor practices and the congressional indication of the proper balance between the employee's interest in vindicating his rights and the national interests in finality in labor law and industrial peace" (quoting DelCostello, 462 U.S. at 170-71, 103 S.Ct. at 2293-94) were dispositive to the case before it. 769 F.2d at 334-35. We find that Adkins has established that the applicable statute of limitations period for a Title I LMRDA action is six months.
 
 
 7
 We further determine that the six-month statute of limitations period should apply to this case retroactively even though it was filed before Adkins and DelCostello were decided. This court in Smith v. General Motors Corp., 747 F.2d 372, 375 (6th Cir.1984) (en banc ), has already held that "the Supreme Court demonstrated its intent to apply DelCostello retroactively" by applying the six-month statute of limitations to extinguish the claim in the case before it. Because the decision in Adkins was an extension of DelCostello, and was grounded on the Supreme Court's reasoning in that case, we find that the retroactive application of the six-month limitation period should also apply to the instant case.
 
 
 8
 We turn next to the closer question of whether the limitations period should have been equitably tolled while Dunleavy was pursuing internal union remedies made available to him by his Union's By-Laws and Constitution. In that consideration, the date of the accrual of the appellant's cause of action becomes immaterial.
 
 
 9
 Two policies seem to be at odds in this case. On the one hand, there exists the important national policy favoring a swift and uniform resolution of labor disputes. This is the same policy that is at the heart of the imposition of the relatively brief six-month time limit borrowed from Section 10(b) of the NLRA. DelCostello, 462 U.S. at 168-69, 103 S.Ct. at 2292-93; Adkins, 769 F.2d at 334-35. On the other hand is the policy embodied in the exhaustion doctrine which encourages the self-governance of labor organizations through the development of internal procedures, providing an avenue for redress of grievances for its members. See Clayton v. UAW, 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981). This is the policy that we think speaks the louder in the present case.
 
 
 10
 Through the policy of exhaustion, unions are afforded the initial opportunity to correct their own internal problems through self-regulation and are encouraged to be responsible for their own actions. See, e.g., Johnston Boiler Co. v. Local Lodge No. 893, 753 F.2d 40, 42-43 (6th Cir.1985). Prior union action may assist the court in resolving the controversy that may eventually come before it by interpreting union rules and defining or redefining the issues. The need for self-governance is most clearly in focus where, as in the present case, the complaint alleges wrongdoing in internal union affairs. See, e.g., Bise v. Int'l Bhd. of Elec. Workers, 618 F.2d 1299 (9th Cir.1979).
 
 
 11
 We agree, as appellee argues, that appellant Dunleavy was not legally required to appeal his claim to the International Convention. The Constitution of International Union, United Steelworkers of America makes the remedy available in the following provision:
 
 
 12
 The accused or the accuser may appeal to the International Executive Board and thereafter to the next regular International Convention provided that such person files notice of appeal with the International Secretary within thirty (30) days after notice of the decision of the Local Union or the International Executive Board from which the appeal is taken.
 
 
 13
 Art. XIII, Sec. 6.
 
 
 14
 A union member, however, is not statutorily required to pursue a claim through internal procedures longer than four months before instituting judicial proceedings. 29 U.S.C. Sec. 411(a)(4). The statutory provision allowing the instigation of suit in federal court after four months of internal procedural exhaustion does not vitiate the section in the Union's Constitution that permitted an appeal to the Convention. On the contrary, the four-month period was established to protect the union member from being unfairly delayed by hostile or unresponsive union proceedings. The provision is to be used as a shield for aggrieved union members not as a sword for the union to use against a union member who is conscientiously following union procedures.
 
 
 15
 The optional rather than mandatory language in the Union Constitution delineating the Union process for internal appeal makes the exhaustion issue a closer question, but nevertheless we are persuaded by the fact that the Union Constitution, Art. XIII, Sec. 7 and By-Laws, Art. X, Sec. 20 also unequivocally requires a union member to exhaust all remedies. The Union Constitution states:
 
 
 16
 It shall be the duty of a member to exhaust all said member's internal remedies and appeals provided under the Constitution and policies of the International Union and the Local Union By-Laws.
 
 
 17
 Art. XIII, Sec. 7. The Union Constitution, Art. XII, Sec. 1(c) and the By-Laws, Art. IX, Sec. 1(c) specifically state that it is an offense for a member not to exhaust union remedies. The Union By-Laws state that a member may be penalized for
 
 
 18
 instituting, or urging, or advocating that a member of any Local Union institute action outside the Union against the International Union, Local Union or any of their officers without first exhausting all remedies through the forms of appeal of the International Union....
 
 
 19
 Article IX, Sec. 1(c). It is a dubious position that the Union takes when it asserts that it was only extending an optional appeal path for its members to choose and then penalizing the union member if the "optional" appeal was not chosen.
 
 
 20
 In tolling the statute of limitations in this case, we find that the safeguards that must be considered when deciding a statute of limitations question are present in this case. The Supreme Court in Burnett v. New York Central R.R., 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1968), outlined the general purposes of statutes of limitations and noted that to assure fairness to defendants, such statutes must "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Id. at 428, 85 S.Ct. at 1054. In the present case, the defendant Unions were obviously on notice as to the nature of Dunleavy's claim and the evidence remained fresh during the additional months when Dunleavy appealed his claim to the Convention. The claims Dunleavy asserted through the internal appeal process were the same claims he ultimately asserted in his complaint; these were claims not at all independent of each other. In addition, it appears that Dunleavy was diligent in his efforts to pursue his claim through Union channels which were certainly adequate and in fact were devised to redress his particular grievances. A recent district court, when faced with the same issue, held that "so long as a union member is engaged in a good faith attempt to exhaust his internal remedies with respect to a Sec. 411 claim, the six-month period of limitations is tolled." Waring v. Int'l Longshoremen's Ass'n Local 1414, 653 F.Supp. 374 (S.D.Ga.1987). We find that the Union could not be said to be prejudiced by Dunleavy's following the very procedures outlined in the Union's own Constitution and By-Laws.[2]
 
 
 21
 The Union's position would seem to require one placed in Dunleavy's situation to file a lawsuit which would become superfluous in the event of favorable Convention action simply as a matter of protection. In addition to other practical objections to such filings, we feel constrained to point out that we would be loath to require further cluttering up the docket of the overburdened federal judicial system for such a contingent purpose. The court in Waring, supra, stated that "[i]t is doubful that the language of Sec. 411 was intended, or that it now should be read, to require all union members encountering a lengthy internal procedure to rush to the courthouse four months after the occurrence of the complained-of act."
 
 
 22
 We conclude that plaintiff's claim was tolled while he pursued his internal union remedies and accordingly reverse the order of the district court and remand for further proceedings.
 
 
 23
 CELEBREZZE, Senior Circuit Judge, concurring.
 
 
 24
 This appeal raised three main issues for our review, namely: (1) whether the six-month limitations period found in section 10(b) of the National Labor Relations Act governs suits brought under Title I of the Labor Management Reporting and Disclosure Act (LMRDA); (2) assuming that this six-month limitations period does apply to such LMRDA actions, whether it should be applied retroactively; and (3) assuming affirmative answers to the first two questions, whether this limitations period is tolled while an aggrieved union member pursues internal union remedies. I fully agree that the six-month limitations period governs LMRDA Title I actions, should be applied retroactively, and is tolled while a union member pursues internal union remedies. I write separately only to enunciate my reasons for concluding that our holding that the six-month limitations period is tolled while union appeals are pursued does not conflict with those precedents, notably Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and International Union of Electrical Workers v. Robbins & Myers, Inc., 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), which have determined that an employee's pursuit of grievance procedures does not toll the time for initiating civil rights actions.
 
 
 25
 In Ricks, a university professor who had been denied tenure unsuccessfully grieved this termination decision before the university's board of trustees and later filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC), a prerequisite to bringing a Title VII employment discrimination suit. 449 U.S. at 252-54, 101 S.Ct. at 501-02. The EEOC complaint would have likely been timely if measured from the date the grievance was denied, but was untimely, barring Ricks' Title VII action, because the limitations period for filing the EEOC complaint was deemed to have begun on the date of the university's employment decision. See id. at 260 n. 13, 101 S.Ct. at 505 n. 13. The Supreme Court, relying on Electrical Workers, held that
 
 
 26
 the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods. The existence of careful procedures to assure fairness in the tenure decision should not obscure the principle that limitations periods normally commence when the employer's decision is made.
 
 
 27
 Id. at 261, 101 S.Ct. at 505 (citation and footnotes omitted). In Electrical Workers, a discharged employee had pursued grievance procedures in accordance with provisions of a collective bargaining agreement then in force between her local union and her employer, 429 U.S. at 231-32, 97 S.Ct. at 444-45, but the Supreme Court held that this did not toll the time for filing a complaint with the EEOC. Id. at 236-37, 97 S.Ct. at 446-47. The Court emphasized that the collective bargaining agreement grievance procedure involved the exercising of contract rights which were distinct from the statutory rights contained in Title VII, and concluded that the collective bargaining agreement grievance procedures and the Title VII statutory rights represented two independent remedies available to employees. Id. The Court rejected both the argument that pursuit of grievance procedures should toll the time for beginning a Title VII action in order to foster the central role of arbitration in labor-management relations, and a related argument that the danger of possible conflict between the concurrent pursuit of both collective bargaining and Title VII remedies should result in tolling. Id. at 238-39, 97 S.Ct. at 447-48.
 
 
 28
 In the instant case, Dunleavy was exercising the provisions of the union constitution and by-laws for pursuing internal union remedies for allegedly improper union discipline in a manner similar to an employee's utilization of grievance procedures involving an employer. In addition, since the LMRDA statutorily provides that a union member need only pursue internal union procedures for a period of four months before instituting judicial proceedings, 29 U.S.C. Sec. 411(a)(4) (1982), the LMRDA represents a statutory right independent of the union member's right to internally appeal adverse union discipline for a longer period of time. Finally, the six-month limitations period we conclude is applicable to LMRDA Title I actions defines a time for instituting suit under that statute just as Title VII prescribes time limits for filing EEOC complaints prerequisite to bringing a civil rights suit. Therefore, by analogy to Ricks and Electrical Workers, it may appear that the time for an aggrieved union member to bring suit against a union under the LMRDA should not be tolled by the pursuit of internal union remedies.
 
 
 29
 I am convinced, however, that the pursuit of internal union remedies does toll the time for bringing an LMRDA action for two reasons. First, the policy of union resolution of internal union problems is stronger than the policy favoring arbitration in labor-management relations that was impacted in Ricks and Electrical Workers. This is shown by the requirement that an aggrieved employee/union member must exhaust internal union remedies (with limited exceptions) before bringing a hybrid Sec. 301/unfair representation claim. See, e.g., Clayton v. UAW, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981); Adkins v. International Union of Electrical, Radio & Machine Workers, 769 F.2d 330, 336 (6th Cir.1985). The strength of the policy favoring union resolution of internal union disputes is further illustrated by that provision of the LMRDA itself which provides that a union member may be required to exhaust union procedures, albeit only for a period of four months. See 29 U.S.C. Sec. 411(a)(4) (1982). The LMRDA, therefore, is designed to apply in most cases only after attempts to resolve grievances through the internal procedures of a union have failed.
 
 
 30
 Second, there is a much closer nexus between an aggrieved union member's pursuit of internal union remedies and a subsequent LMRDA suit than is present when an employee pursues collective bargaining and Title VII remedies. In concluding that collective bargaining contract rights and Title VII statutory rights represent two distinct, independent remedies available to employees, the Supreme Court was influenced by the fact that the grievance procedure involves only contractual questions which "but fortuitously implicate the Title VII standards." Electrical Workers, 429 U.S. at 240-41 n. 14, 97 S.Ct. at 449 n. 14, see Alexander v. Gardner-Denver Co., 415 U.S. 36, 52-54, 94 S.Ct. 1011, 1021-22, 39 L.Ed.2d 147 (1974). In cases involving allegedly improper union discipline of union members, however, the arguments raised during internal union appeals are very likely to be the same issues raised in a subsequent LMRDA suit against the union. In the instant case, for example, Dunleavy alleged during his internal union appeals that he had been disciplined by the local union for exercising free speech rights and had not been afforded a proper hearing, the same grounds which he raised in his complaint brought pursuant to the LMRDA.
 
 
 31
 In sum, I am convinced that LMRDA Title I actions are more akin to hybrid Sec. 301/unfair representation actions than to cases like Ricks and Electrical Workers. Therefore, although a union member is not required by the LMRDA to exhaust internal union remedies (for longer than four months), both the strong policy of internal union resolution and the close association of issues in the union procedure and a subsequent LMRDA suit counsel against punishing a union member for pursuing internal union remedies before bringing a LMRDA Title I action.
 
 
 32
 For the foregoing reasons, I concur.
 
 
 
 [1]
 Appellant Dunleavy argues that the district court abused its discretion in allowing the defendants to amend their answer in order to assert a limitations defense so late in the proceedings. Courts have broad discretion to allow an amendment to the pleadings and leave should be freely granted "when justice so requires." Fed.R.Civ.P. 15(a). We find no abuse of discretion and conclude that the plaintiff was not prejudiced in the prosecution of his case in this regard. See Adkins v. Int'l Union of Elec., Radio & Mach. Workers, 769 F.2d 330, 334 (6th Cir.1985) (holding district court did not err in allowing defendant leave to assert affirmative defense of limitations even after trial had already begun)
 
 
 [2]
 Appellee Union asserts that Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and Int'l Union of Elec. Workers v. Robbins & Myers, Inc., 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), holding that an employee's pursuit of grievance procedures does not toll the time for initiating civil rights actions, should be analogous to the present case. We find, as Judge Celebrezze points out in greater detail in his separate concurrence, that the cited civil rights cases are inapposite because of the unique policy behind the LMRDA in favor of resolving internal disputes and the independent, single federal cause of action in this case