Sam GENCO, Plaintiff,

v.

**UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, LOCAL 1005, et al., Defendants.**

No. C88–0397.

United States District Court,
N.D. Ohio, E.D.

Sept. 27, 1988.

On Remand Aug. 21, 1989.

Alan Belkin, Shapiro, Turoff, Gisser & Belkin, Cleveland, Ohio, for plaintiff.

Barbara J. Leukart, Dennis M. Kelly, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for General Motors Corp.

Betty Grdina, Bobulsky, Gervelis & Grdina, Ashtabula, Ohio, for defendants.

## MEMORANDUM OF OPINION

MANOS, District Judge.

On February 12, 1988, Sam Genco, plaintiff, filed the above-captioned case against the United Automobile, Aerospace and Agricultural Workers of America, Local 1005 ("UAW"), its Shop Chairman Roger Montgomery, and General Motors Corporation ("GM"), defendants, alleging that each has violated Genco's rights as a union member under § 101 of the Labor–Management Reporting and Disclosure Act ("LMRDA").[1] Jurisdiction is proper under 29 U.S.C. § 412.[2] The case is currently before the court on UAW's and Montgomery's motion for summary judgment, and GM's motion to dismiss.[3] For the following reasons, both motions are granted.

### I.

Pursuant to a general mandate in the 1984 collective bargaining agreement, GM and the UAW established a program of safety training classes which would be taught by hourly workers. The UAW was given discretion to select the instructors; GM required only that they be capable of performing their tasks. The instructors remained classified in their jobs and were paid their regular wages, but worked full-time on safety training. In December, 1985, Genco was chosen as one of six workers assigned to safety training.

In April, 1987, Genco campaigned against the incumbent Shop Chairman Montgomery. When Montgomery won re-election in May, 1987, he immediately told

---

1. 29 U.S.C. § 411. Genco does not specify the particular right allegedly violated; however, § 411(a)(2) provides in pertinent part
    Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions....

2. 29 U.S.C. § 412 provides in pertinent part:

    Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court....

3. GM's motion to dismiss is treated as one for summary judgment. Fed.R.Civ.P. 12(b).

GM to remove Genco as a safety instructor. GM did so on June 3, 1987, and Genco was permanently returned to his regular job as an electrician. The removal has not affected his union membership or his GM job.

Genco approached Tom Jones, the shop and zone committeeman of UAW, and told him that he wished to protest his removal. Jones allegedly led Genco to believe that "there were no avenues of protest available ... through union channels." Plaintiff's Memo in Response (Genco aff. ¶ 8).

On August 14, 1987, Genco filed charges with the National Labor Relations Board ("NLRB"). An adverse decision was rendered on September 30, 1987.[4] Genco then sought legal counsel. *Id.* Genco's appeal to the General Counsel of the NLRB was denied on November 27, 1987; Genco received the decision in December, 1987. *Id.*

On December 10, 1987, Genco filed a complaint with the International Union. *See* UAW–Montgomery Motion for Summary Judgment, Ex. A–5. The International Union, in a letter dated January 8, 1988, deemed his complaint untimely and notified Genco that it would not be pursued. *Id.* This lawsuit was commenced on February 12, 1988.

## II.

The parties are agreed that Genco's cause of action accrued on June 3, 1987, and that a six-month period of limitations applies to actions brought under the LMRDA. *See* Plaintiff's Memo in Response at 11, 13; *Dunleavy v. Local 1617, United Steelworkers of America,* 814 F.2d 1087 (6th Cir.1987). Genco argues, however, that the limitations period should be equitably tolled for any one of three reasons: because he pursued internal union remedies, because he was misled as to their availability, or because he pursued relief from the NLRB. His arguments are not persuasive.

### A.

■ In *Dunleavy, supra,* the Sixth Circuit held that accrual of a cause of action for a violation of the LMRDA may be equitably tolled while the plaintiff pursues internal union remedies, even though that pursuit is not statutorily required. *See id.* at 1089–91. Genco, faced with the seemingly dispositive observation that his appeals were not *commenced* until the expiration of the sixth month period, argues that the UAW knew of his claim and would not be prejudiced by its assertion, and that he has acted in good faith. He says that these observations content the policy concerns of any given limitations period, *see Burnett v. New York Central R.R. Co.,* 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965) (cited in *Dunleavy, supra,* at 1090), and the elements of the equitable tolling doctrine, *see Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.,* 707 F.2d 1030, 1033 (9th Cir.1983) (California law) ("timely notice and lack of prejudice to the defendant, and reasonable and good faith conduct on the part of the plaintiff").

The argument ignores, however, "the important national policy favoring a swift and uniform resolution of labor disputes [,] the same policy that is at the heart of the imposition of the relatively brief six-month time limit." *Dunleavy, supra,* at 1089. *Dunleavy* allowed equitable tolling because the court found that policy outweighed by "the exhaustion doctrine which encourages the self-governance of labor organizations...." *Id.*

The policy is not outweighed when internal union procedures are *not* pursued within the limitations period. Were it so, Genco's argument could be made by a non-exhausting plaintiff who files suit in seven, eight, ten, perhaps twelve months after accrual. Tolling is available to a plaintiff "making a valid, *timely,* and nonfrivolous attempt to pursue ... contractual remedies

4. The NLRB wrote, in pertinent part:
    Even assuming that you were removed from your position as a Safety Instructor solely because you campaigned against an incumbent officer, the Board has held that such

conduct does not constitute a violation of the [National Labor Relations Act].
UAW–Montgomery Motion for Summary Judgment Ex 1–3.

in reasonable good faith." *Adkins v. International Union of Elec., Radio & Mach. Workers,* 769 F.2d 330, 336 (6th Cir. 1985) (emphasis added). Because Genco's pursuit of union remedies was not timely, tolling is not available on this ground.

### B.

■ Next, Genco argues that tolling should apply because he was misled by Jones as to the availability of internal remedies. *See ante* at 880. In *Shapiro v. Cook United, Inc.,* 762 F.2d 49 (6th Cir. 1985), the court rejected an argument "that simply relies on his own ignorance of the expressed terms of his own collective bargaining agreement *without any other indication that the union ... possibly misled the plaintiff* or fraudulently concealed something from the plaintiff." *Id.* at 51 (emphasis added). However, this statement was made in the context of a discussion of equitable tolling based upon fraudulent concealment. Fraudulent concealment is established by proof of three elements:

> "(1) Wrongful concealment of *their actions* by the defendants; (2) failure of the plaintiff to discover the *operative facts that are the basis of his cause of action* within the limitations period; and (3) plaintiff's due diligence until discovery of the *facts.*"

*Campbell v. Upjohn Co.,* 676 F.2d 1122, 1126 (6th Cir.1982) (citation omitted; emphasis added), cited in *Shapiro* at 51; *see also id.* (affirming "general rule that the period begins to run when the claimant discovers ... the acts constituting the alleged violation"). Thus, tolling does not apply to the fraudulent concealment of an available remedy, given a particular set of known facts.

Because Genco knew of the "act[ ] constituting the alleged violation"—his removal from the safety instructor position—on June 3, 1987, the limitations period began. It is irrelevant that someone may have concealed the "fact" that an internal union remedy might have been available, and it is undisputed that no one concealed the "fact" that a LMRDA remedy might have been available.

### C.

■ Lastly, Genco contends that his pursuit of an NLRB remedy should toll the limitation period. In *Adkins, supra,* the court recognized that because "an unfair representation claim is wholly independent of any unfair labor practice charge before the NLRB.... [a]n NLRB filing ... does not toll or prevent the accrual of an unfair representation claim." *Adkins* at 335. The same applies to a cause of action under the LMRDA: it is wholly independent of the NLRB, and accrual is not tolled by filing charges.

### III.

Because Genco did not commence suit until after the expiration of the applicable limitations period, and because no reason exists to toll that period, his action is time barred. Therefore, the court does not consider Genco's position that his removal was prohibited, or the defendants' position that his removal was permitted, by the rationale of *Finnegan v. Leu,* 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982). Accordingly, the defendants' motions for summary judgment are granted. IT IS SO ORDERED.

### ON REMAND

On February 12, 1988, Sam Genco, plaintiff, filed the above-captioned case against United Automobile, Aerospace and Agricultural Workers of America, Local 1005 ("UAW"), its Shop Chairman Roger Montgomery, and General Motors Corporation ("GM"), defendants, alleging that his removal from the position of Safety Instructor at the Parma, Ohio GM Plant violated his rights as a union member under § 101 of the Labor–Management Reporting and Disclosure Act ("LMRDA").[1] Jurisdiction

---

**1.** 29 U.S.C. § 411(a)(2) provides the basis for Genco's claim:

> Every member of any labor organization shall have the right to meet and assemble

freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization

is proper under 29 U.S.C. § 412.[2] On September 27, 1988, the court dismissed this case because the statute of limitations had run. In light of the intervening Supreme Court decision in *Reed v. United Transport Union*, —— U.S. ——, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989),[3] the Sixth Circuit reversed and remanded this case to the district court for consideration on the merits. It is now before the court on UAW's and Roger Montgomery's motion for summary judgment.[4] For the following reasons, this motion is granted.

### I.

As part of a 1984 collective bargaining agreement, GM and the UAW established a program providing for health and safety training classes to be taught by hourly workers from the local GM plants. Local UAW officers were given discretion to select instructors for the classes; GM required only that the instructors be capable of performing their duties under the program. Instructors remained classified in the jobs they held prior to their selection and were paid their regular wages, but worked full-time on safety training. In December, 1985, Genco was one of six workers assigned to safety training at the Parma GM plant.

In April, 1987, the UAW held an election for union officers. Genco supported Walter Kijek for Shop Chairman in opposition to the candidacy of incumbent Roger Montgomery. Upon his reelection in May, 1987, Montgomery immediately told GM to remove Genco as Safety Instructor. GM did so on June 3, 1987, and Genco was permanently returned to his regular job as an electrician. The removal did not affect Genco's union membership or his job classification.

### II.

The sole issue in this case is whether the defendants violated § 101(a)(2) of the LMRDA by removing Genco from his union-appointed position as Safety Instructor.

In *Finnegan v. Leu*, 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982), the Supreme Court held that the discharge of a union's appointed business agent by the union president, following his election over the candidate supported by the agent, did not violate § 101 of the LMRDA. *Id.* at 442, 102 S.Ct. at 1873. The Supreme Court distinguished between the rights of a union *member*, which are protected under § 101 of the Act, and union *staff appointees*, which are not. The Supreme Court held that termination of union employment, even if done in retaliation for campaign activity in opposition to the newly elected union leadership, is only an *indirect* interference with membership rights and does not establish a violation of the Act. *Id.* at 440–442, 102 S.Ct. at 1872–74.[5]

his views upon candidates in an election of the labor organization....

**2.** 29 U.S.C. § 412 provides that:
Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court....

**3.** When this case was first decided, controlling Sixth Circuit authority applied a six-month statute of limitations to claims brought by union members against the union under the LMRDA. *Dunleavy v. Local 1617, United Steelworkers of America*, 814 F.2d 1087, 1089 (6th Cir.1987) (borrowing the federal statute applicable to unfair labor practice claims under § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b)). In an effort to settle a conflict among the circuits, the Supreme Court in *Reed* held that suits brought under § 101(a)(2) are analogous to those brought under 42 U.S.C. § 1983 and are governed by the same statute of limitations, the state's general or residual personal injury statute of limitations. —— U.S. at ——, 109 S.Ct. at 626. In Ohio, the appropriate statute is Ohio Rev.Code Ann. § 2305.10. *Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989) (applying Ohio's two-year bodily injury statute of limitations to § 1983 suits). Defendants UAW and Montgomery no longer raise the defense that Genco's action is time-barred.

**4.** Genco voluntarily dismissed his action against defendant GM on May 9, 1989.

**5.** In *Finnegan*, the Supreme Court "left open the question whether a different result might obtain in a case involving nonpolicymaking and nonconfidential employees." *Finnegan v. Leu*, 456 U.S. 431, 441 n. 11, 102 S.Ct. 1867, 1873 n. 11, 72 L.Ed.2d 239 (1982).

The Supreme Court's recent decision in *Sheet Metal Workers v. Lynn,* —— U.S. ——, 109 S.Ct. 639, 102 L.Ed.2d 700 (1989) reaffirms its fidelity to the statutory objective of democratic union governance expressed in *Finnegan.* The Court held that:

> [T]he basis for the *Finnegan* holding was the recognition that the newly elected president's victory might be rendered meaningless if a disloyal staff were able to thwart the implementation of his programs. While such patronage-related discharges had some chilling effect on the free speech rights of the business agents, we found this concern outweighed by the need to vindicate the democratic choice made by the union electorate.

—— U.S. at ——, 109 S.Ct. at 644. The *Sheet Metal Workers* decision drew a distinction between appointed and elected union officials. The Court held that removal of an elected union official for political reasons would violate § 101 of the LMRDA, but removal of an appointed official continues to be outside the prohibitions of the Act. *Id.,* —— U.S. at ——, 109 S.Ct. at 644–45.

The Sixth Circuit decision in *Cehaich v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America,* 710 F.2d 234 (6th Cir.1983) follows the rationale of *Finnegan,* and directly addresses the arguments raised by Genco. *Cehaich* holds that an appointed union employee responsible for effectuating union policy is subject to removal for disagreement with the union leadership. *Id.* at 239. The Sixth Circuit refused to apply the "nonpolicymaking and nonconfidential" exception to the Supreme Court's holding in *Finnegan, see supra* note 5, to exempt a union benefits representative from removal despite the fact that the benefits representative claimed that he was only carrying out set union policy. The court acknowledged Cehaich's dual status as both an officer and a member of the union and ultimately held that union action affecting one does not necessarily affect the other.

Genco argues that his duties as Safety Instructor were limited to communicating a fixed lesson plan to his fellow employees so that his role as a union official was "nonconfidential" and "nonpolicymaking"; therefore, his removal was prohibited by the Supreme Court's holding in *Finnegan.* This argument is not persuasive and is directly rebutted by the Sixth Circuit's holding in *Cehaich.* A union employee entrusted with carrying out important union policy such as Genco, who was responsible for communicating information central to the safety and health program set out by GM and the UAW in their collective bargaining agreement, occupies a trusted position with the union and must be compatible with the union leadership to serve effectively. *See Cehaich, supra,* at 239. Once the union leadership's trust in Genco was lost, he became subject to removal from his appointed position as a union employee.

Genco held a dual status as both a member and an employee of the union. His status as a union employee ended with his removal from the position of Safety Instructor, but his membership in the union did not. He still retains all the rights of a union member. He remains free to express his views on the union leadership at union meetings, to vote in union elections, and to continue in his job as an electrician at the plant. The LMRDA protects the *membership* rights of a union member; it does not grant an appointed union employee the right to hold office at the expense of an elected union leader's freedom to choose his own staff. *Finnegan, supra,* 456 U.S. at 442, 102 S.Ct. at 1873. Genco gained his position as Safety Instructor through an appointment by local UAW officers, not by election; his continued service in that position remained subject to the satisfaction of those officers put into office by the union electorate. *Sheet Metal Workers, supra,* 109 S.Ct. at 644.

### III.

Because Genco cannot show that his removal as Safety Instructor is prohibited, there is no basis for his claim under § 101

of the LMRDA. Accordingly, defendants' motion for summary judgment is granted.

IT IS SO ORDERED.