108 F.3d 1376
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Vernon D. BELL, Plaintiff-Appellant,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendants-Appellees.
 No. 96-3219.
 United States Court of Appeals, Sixth Circuit.
 March 6, 1997.
 
 Before: KENNEDY, NELSON, and GODBOLD*, Circuit Judges.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 After being suspended from a labor union office, Vernon D. Bell sued the International Brotherhood of Teamsters ("IBT") and three of its affiliates for alleged violations of the National Labor Relations Act, 29 U.S.C. § 158(b)(1), and the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411. Defamation claims were asserted in the same action against five individual Teamsters, including appellees Jimmy Duff and Michael Wellman.
 
 
 2
 After dismissing some of the defendants from the case, the district court (Holschuh, J.) entered summary judgment in favor of all remaining defendants. On appeal Mr. Bell challenges only the disposition of his claim against the IBT for violation of the "full and fair hearing" requirement of the Reporting and Disclosure Act and the disposition of his defamation claims against Wellman and Duff.[1] Upon de novo review we conclude that the judgment of the district court must be affirmed.
 
 
 3
 * While serving as president of Teamsters Local 413, Mr. Bell endorsed and cashed two checks, drawn on union funds, made out to Local 413 member Robert Taylor. Bell also had himself reimbursed for picketing expenses incurred by Mr. Taylor.
 
 
 4
 Two Local 413 members filed written charges against Mr. Bell, alleging financial misconduct. The vice president of the IBT assigned a representative to investigate these and other allegations. The investigator met with Bell at least once, and perhaps twice, during February of 1993. Mr. Bell admitted cashing the checks made out to Taylor. In his defense, he asserted that Mr. Taylor owed him money and had authorized him to collect in this way. Mr. Taylor denied having given any such authorization.
 
 
 5
 On February 27, 1993, with assistance from his attorney, Mr. Bell prepared an affidavit setting forth his version of the check and reimbursement imbroglio. The next day, acting on his doctor's advice, Mr. Bell checked himself into a substance abuse treatment program at a hospital in Columbus, Ohio. He asked a union ally, Charlie Teas, to represent him on the charges while he was hospitalized.
 
 
 6
 A regular monthly meeting of Local 413 was held the same day. The meeting was disrupted by members who blocked exits and damaged cars in the parking lot outside, and the local executive board filed charges against the unruly members. Dan Darrow, president of Teamsters Joint Council 41, notified Local 413 on March 1 of a hearing to be conducted on all charges pending within the local union. This notice--addressed to Mr. Teas (Local 413's secretary/treasurer and Mr. Bell's designated representative)--advised that the hearing would begin on March 8 in Columbus. The notice provided that any charge previously filed should be refiled with the IBT by March 4, 1993. On that date Mr. Darrow sent to Local 413 a second notice, which included copies of all refiled charges.
 
 
 7
 James Kirk, one of Mr. Bell's original accusers, refiled his charges against Bell on March 5, the day after the deadline established by Mr. Darrow's March 1 notice. Mr. Bell, who was still in the treatment program at Community Hospital, apparently was not served with a copy of the latest filing.
 
 
 8
 Under powers granted to him by the Teamsters Constitution, IBT General President Ron Carey appointed a three-member advisory panel to conduct the hearing. Two of the panel members were officials from other local unions in Ohio, and the third was a representative of the IBT. The panel took testimonial and documentary evidence over a five day period.
 
 
 9
 Mr. Bell was represented at the hearing by Mr. Teas. Teas made no request for a delay in the hearing to permit Bell to appear personally. Mr. Bell had checked out of the treatment program by the final day of the hearing (March 23), and he did appear personally before the panel on that date.
 
 
 10
 The advisory panel submitted findings and a recommended punishment to General President Carey. The submission read, in part, as follows:
 
 
 11
 "[W]e find that Brother Bell improperly endorsed two (2) checks in the name of Brother Taylor, and further obtained a reimbursement of expenses from the Local Union that should have been applied for, and received by, Brother Taylor. From this same evidence, however, we decline to find that Brother Bell's actions were intended to be fraudulent to the Local Union, or otherwise meant to permanently deprive Brother Taylor of any sums properly owed to him...."
 
 
 12
 "We find that [Bell] did not violate any provision of Article XIX of the IBT Constitution, however, we recommend that Brother Bell [be ordered to repay Taylor the amounts of the two checks and reimbursement, and] be issued a severe reprimand for endorsing two (2) Local Union checks made payable to another Local 413 member, and for submitting the expenses of another as his own...."
 
 
 13
 President Carey issued his decision on August 13, 1993. As to the allegations against Bell, Carey adopted the factual findings of the advisory panel but imposed a stiffer penalty than that recommended by the panel:
 
 
 14
 "Brother Bell violated his responsibilities as an officer of the Local Union by attempting to utilize the Union's reimbursement procedures to recoup a personal debt which may have been owed him by Brother Taylor. Moreover, Brother Bell clearly violated his fiduciary responsibilities by submitting expense vouchers for reimbursement as though they were his own expenses, even though the expenses had actually been incurred by Brother Taylor and others. Submission of such falsifications is an unacceptable breach of Brother Bell's fiduciary responsibilities to the Local Union.
 
 
 15
 "As a penalty for these violations, I am guided by past decisions involving such misconduct. For example, two officials of another Ohio local union who were convicted of embezzling several hundred thousand dollars from that local union were suspended from office for one year. Here, the amount of the checks are [sic ] much less. Accordingly, it is my decision that Brother Bell be suspended from office or employment by Local 413 for six months...."
 
 
 16
 Mr. Bell appealed the Carey decision to the General Executive Board of the IBT. He claims that he asked for, but was not given, a copy of the hearing panel's report in order to prepare his appeal. The IBT says that a copy was provided to Bell's counsel. Mr. Bell was represented by an attorney in this appeal and filed a brief with the Board. On July 21, 1994, after Mr. Bell had served his six-month suspension, the Board upheld the punishment:
 
 
 17
 "[Bell's] arguments do not warrant a reversal of President Carey's decision, accordingly, the decision is affirmed. Brother Bell does not attempt to dispute the facts, but rather merely attempts to justify his conduct. As Brother Carey pointed out in his decision, whether or not there was an outstanding loan between Taylor and Bell, in no event does that justify Brother Bell's attempt to utilize the Union's treasury to recoup a personal debt. It should be noted, however, that the reference to the Ohio officials disciplined for embezzlement should not be understood to mean that Brother Bell's offense was of the same league, but rather the reference was for comparison purposes in order to determine the fair discipline."
 
 
 18
 Local 413 was scheduled to elect new officers in the fall of 1993. On September 7, 1993, defendants Jimmy Duff and Michael Wellman circulated an open letter to the Local 413 membership criticizing Mr. Bell, who was running for vice president:
 
 
 19
 "I would like to point out that Ron Carey found Vern Bell ... guilty of embezzlement and [Bell] was removed from office for breaching his fiduciary responsibilities."
 
 
 20
 Less than a week later, Mr. Bell's attorney wrote to the general secretary/treasurer of the IBT, asking that the "implied" allegation of embezzlement in Mr. Carey's decision be retracted. Threatening legal action if his demands were not met, the attorney requested a new hearing on the charges, an audit to resolve the embezzlement allegation, and a criminal background check on Mr. Bell's accusers.
 
 
 21
 Mr. Bell instituted the present lawsuit after losing the election for vice president. He sued five individual members of Local 413, alleging that they had defamed him by claiming that he was found guilty of embezzlement. Their statements were false, according to Mr. Bell, because neither the hearing panel nor General President Carey had found him guilty of embezzlement. The district court ruled that the statute of limitations had run on the claims against defendants Duff and Wellman, and it rejected Mr. Bell's argument for tolling the limitations period.
 
 
 22
 Mr. Bell also asserted claims against the IBT and three of its affiliates. He alleged that the Teamsters had retaliated against him for commenting on corruption in the grievance mechanism. The alleged retaliation was said to constitute an unfair labor practice in violation of the National Labor Relations Act, 29 U.S.C. § 158(b)(1), and a violation of free speech rights protected by the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(2). Mr. Bell also alleged that his disciplinary proceeding did not satisfy the "full and fair hearing" requirement of the Reporting and Disclosure Act, 29 U.S.C. § 411(a)(5), because he did not receive notice of the charges against him, did not have a reasonable time to prepare his defense, and was not provided with copies of documents he requested during his internal union appeal. The Teamsters affiliates were dismissed voluntarily, and the district court then granted summary judgment for the IBT, holding that it did not commit an unfair labor practice and that Mr. Bell did receive a full and fair hearing. Mr. Bell has perfected a timely appeal.
 
 II
 
 23
 While his case was pending in the district court, Mr. Bell filed a motion to compel responses to some of his discovery requests. He also had a subpoena issued for the same material that had been sought in the discovery requests. A magistrate judge denied the motion and quashed the subpoena. Mr. Bell then filed a motion asking that the district judge reconsider the magistrate's order. The district judge did not rule on this motion prior to granting summary judgment.
 
 
 24
 Citing Rule 72(a), Fed.R.Civ.P., and 28 U.S.C. § 636(b)(1), Mr. Bell argues that he was entitled to a ruling on his motion for reconsideration. Mr. Bell's argument finds no support in 28 U.S.C. § 636(b)(1). That provision merely invests district judges with certain discretionary powers in reviewing a magistrate judge's orders.
 
 
 25
 Rule 72(a) states that a district judge "shall consider" objections to a magistrate judge's order on a nondispositive matter and "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Assuming arguendo that Rule 72(a) required the district judge in the case at bar to rule explicitly on Mr. Bell's motion for reconsideration, we are satisfied that any error was harmless. Mr. Bell's discovery requests and subpoena sought two types of information: (1) the identity of the drafter of Mr. Carey's decision; (2) facts pertaining to disputes between Mr. Bell and certain Teamsters factions. None of this information was relevant to Mr. Bell's legal claims, and the requested discovery was thus not "material" as that term is used in Rule 56, Fed.R.Civ.P.
 
 III
 
 26
 The district court held that the defamation claims against defendants Duff and Wellman were time-barred. Ohio Revised Code § 2305.11 requires that a claim of libel or slander be filed within one year of the accrual of the cause of action. Ohio law is clear that a cause of action for defamation accrues when the offending statement is made, regardless of the timing of the plaintiff's discovery of the statement. See, e.g., Lyons v. Farmers Ins. Group of Cos., 67 Ohio App.3d 448, 450, 587 N.E.2d 362, 363-64 (Allen 1990). The allegedly defamatory statements made by Messrs. Duff and Wellman were contained in a letter of September 7, 1993. The case at bar was not filed until January of 1995, well over a year after the cause of action accrued.
 
 
 27
 Mr. Bell argues that the limitations period was tolled while he pursued his internal union appeal. In Dunleavy v. Local 1617, United Steelworkers of Am., 814 F.2d 1087, 1089-90 (6th Cir.1987), this court held that the federal policy encouraging self-governance of labor unions required tolling of limitations periods during internal union appeals. Our court clarified the Dunleavy rule, however, in Robinson v. Central Brass Mfg. Co., 987 F.2d 1235 (6th Cir.), cert. denied, 510 U.S. 827 (1993). The Robinson panel concluded that the Dunleavy principle applies only when "the internal union appeal [can] afford the claimant some relief from the defendant." Id. at 1242. The panel therefore held that the plaintiff's claim against her union (from which she sought relief in the internal appeal) was not time-barred, but her claim against her employer (which was not a party to the internal appeal and against which that appeal could afford no relief) was time-barred. Id. at 1243-44.
 
 
 28
 Mr. Bell's internal union appeal had no connection with the allegedly defamatory statements made by defendants Duff and Wellman. The appeal could afford no relief against these defendants. The limitations period was not tolled, and the claims are time-barred.
 
 IV
 
 29
 Mr. Bell attacks the summary judgment on the ground that the district court failed to construe the facts in the light most favorable to him. In his appellate brief he provides a lengthy list of "facts" that were purportedly ignored by the district court or erroneously construed in favor of the defendants. Some of these alleged facts are simply legal conclusions, and the existence of a dispute thereover does not preclude summary judgment. Most of the truly factual matter cited by Mr. Bell is legally irrelevant to the claims he has pursued on appeal, and thus is not "material" within the meaning of that term as used in Rule 56, Fed.R.Civ.P. Several of the facts cited, however, are indeed relevant to the "full and fair hearing" issue--and we turn to that issue next.
 
 V
 
 30
 The Labor-Management Reporting and Disclosure Act establishes certain procedural protections for union disciplinary proceedings:
 
 
 31
 "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." 29 U.S.C. § 411(a)(5).
 
 
 32
 In Kuebler v. Cleveland Lithographers and Photoengravers Union Local 24-P, 473 F.2d 359, 364 (6th Cir.1973), this court held that the "full and fair hearing" requirement incorporates the "traditional concepts of due process...." This does not mean that all of the due process protections available in the federal courts apply to union disciplinary proceedings. On the contrary, such proceedings need only adhere to the "basic principles of due process." Mayle v. Laborer's Int'l Union of N. Am., 866 F.2d 144, 146 (6th Cir.1988); cf. Wildberger v. American Fed'n of Gov't Employees, 86 F.3d 1188, 1193 (D.C.Cir.1996) (the Act protects only against a "breach of fundamental fairness"). We think Mr. Bell received a hearing that comported with the basic principles of due process and fundamental fairness.
 
 
 33
 Mr. Bell claims that he was not served with written specific charges, as the Act requires. But the charges filed with the hearing panel were merely a reprise of the written charges that had previously been filed against him. Mr. Darrow's notice of March 1, 1993, (which set the ground rules for the hearing) required that all charges be refiled. Mr. Bell had already met with an IBT investigator about these same charges, had indicated that he understood them, and had related his version of the relevant events. With the assistance of counsel, he had prepared a seven-page affidavit designed to rebut the charges. Even if Mr. Bell was not formally served with copies of the refiled charges, he was clearly aware of the nature and the specifics of the original charges. We think that this satisfies the requirements of the Act. Cf. International Bhd. of Boilermakers v. Hardeman, 401 U.S. 233, 245 (1971) (charges must be "specific enough to inform the accused member of the offense that he has allegedly committed"). Mr. Darrow's requirement that the charges be refiled was nothing more than Darrow's own ad hoc decision; the Act does not elevate that decision to the status of a legal requirement.
 
 
 34
 Although Mr. Bell claims he was not notified of the hearing that began on March 8, 1993, he was clearly aware of the hearing. Two hearing notices were sent to Local 413 in care of Charlie Teas, who was, as we have said, Mr. Bell's appointed representative. At his deposition Mr. Bell admitted that he was aware of the hearing prior to its start. And Mr. Bell testified at the hearing, albeit on its last day, after he had completed a voluntary treatment program.
 
 
 35
 Mr. Bell complains that the Teamsters' General Executive Board never ruled on his motions for a summary ruling, a new hearing, and a stay pending appeal. These omissions hardly amount to a violation of the "traditional concepts of due process" or a "breach of fundamental fairness."
 
 
 36
 Finally, Mr. Bell argues that he asked for, but was not provided with, a copy of the hearing panel's report to General President Carey. He contends that he could not effectively appeal Mr. Carey's decision without the report. The IBT disputes this contention, maintaining that Bell's counsel was given a copy of the report. Assuming the truth of Mr. Bell's contention, as we must, this omission did not amount to a denial of a full and fair hearing. Mr. Bell was represented by counsel during his internal union appeal and filed a brief with the General Executive Board. The hearing panel's findings and recommendations were merely advisory; it was President Carey's decision that had binding effect. And although Mr. Carey's decision adopted and incorporated the factual findings of the panel, these facts were never disputed and were well known to all parties involved; from the beginning, Mr. Bell admitted most of the factual predicates for his punishment.
 
 
 37
 We are satisfied that the hearing comported with the basics of due process. The charges against Mr. Bell were heard by an impartial panel of his peers. Mr. Bell testified on the hearing's last day and was defended by a representative of his choosing during the hearing's other sessions. Mr. Bell was fully aware of the substance of the charges against him, and he knew, prior to the hearing, when it would begin. Mr. Bell was granted an appeal of Mr. Carey's decision, and he was permitted to file a brief on appeal and to be represented by counsel of his choosing. The Act does not require a perfect hearing, only a full and fair one. We cannot accept Mr. Bell's demand for more.
 
 
 38
 AFFIRMED.
 
 
 
 *
 The Honorable John C. Godbold, United States Circuit Judge for the Eleventh Circuit, sitting by designation
 
 
 [1]
 By not presenting them to this court, Mr. Bell has abandoned all other claims before the district court. Boyd v. Ford Motor Co., 948 F.2d 283, 284 (6th Cir.1991)