Carol ROBINSON, Plaintiff–Appellant,

v.

CENTRAL BRASS MANUFACTURING COMPANY and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW Local 1196, Defendants–Appellees.

No. 92–3090.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 8, 1992.

Decided Feb. 24, 1993.

Mark D. McGraw, Perk & Miller, Cleveland, OH (argued and briefed), for Carol Robinson.

Carl E. Cormany, Mark V. Webber (argued and briefed), Bernard Goldfarb, Goldfarb & Reznick, Cleveland, OH, for Central Brass Mfg. Co.

Betty Grdina (argued and briefed), Bobulsky & Grdina, Ashtabula, OH, for International Union, United Auto. Aerospace & Agricultural Implement Workers of America, Local 1196.

Before: MERRITT, Chief Judge; and MARTIN and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

Plaintiff Carol Robinson appeals a grant of summary judgment in favor of Central Brass Manufacturing (Central Brass) and her union, Local 1196 of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (Union), related to her allegedly wrongful discharge from her job at Central Brass. We affirm the grant of summary judgment in favor of Central Brass, and we reverse the grant of summary judgment regarding the claim of breach of the duty of fair representation against the Union.

## I

Central Brass discharged Carol Robinson for excessive absenteeism on October 24, 1989. Robinson filed a grievance regarding the discharge pursuant to the collective-bargaining agreement. Pursuant to paragraph "e" of the Grievance Procedure, Central Brass's Management Committee met with the Union's Shop Committee and a representative of the Regional Director of UAW on November 1, 1989. After the meeting, Central Brass denied the grievance and informed the Union of the denial on November 2, 1989.

Pursuant to Paragraph "f" of the Grievance Procedure, the Union had the right to arbitrate Robinson's grievance upon written request to Central Brass within ten working days of the denial. Thus, the Union had until November 16, 1989, to request arbitration. On November 9, 1989, the Union informed Robinson by letter that "the Bargaining Committee has decided your Grievance # 16–89 lacks merit and should not be advanced to arbitration." The letter explained: "If you are not satisfied with this decision, you may appeal as provided for in Local # 1196 By–Laws (Article 16) and the Constitution of the International Union (Article 33)." Attached to the letter was a copy of Article 16 of the Local's by-laws. Article 16, § 3 states:

In no case shall a member appeal to a court or governmental agency for redress until he has exhausted his rights of appeal under the laws of the International Union and the By-laws of this Local Union. Any violation thereof shall be cause for summary suspension or expulsion by the International Executive Board. . . .

Also attached to the letter was a copy of Article 33 of the UAW's constitution, which establishes an internal appeals process for union members with grievances against the Union. The process includes several steps, including an initial right of appeal to the membership of the Local Union; a subsequent right of appeal to the International Executive Board; and a final right of appeal to the Convention Appeals Committee or if, as here, the complaint alleges that the grievance was improperly handled because of fraud, discrimination or collusion, to the Public Review Board.

This letter and these two attachments, however, did not tell the whole story. Many collective-bargaining agreements between the UAW and employers contain provisions whereby the employers agree to reinstate a grievance and to continue the grievance procedure if, upon internal union appeal, the grievance is found to have been improperly withdrawn. The UAW–Central Brass collective-bargaining agreement, however, did not contain such a provision. To the contrary, the UAW–Central Brass agreement allowed reinstatement *only* if 1) a court or government agency found improper withdrawal or 2) Central Brass and the Union both agreed to reinstate the grievance. Therefore, the internal appeals scheme explained in the letter could not have resulted in Robinson's reinstatement to her job.

The Union did not request arbitration by November 16, 1989. On December 28, 1989, Robinson exercised her right to appeal the Union's withdrawal of the grievance to the International Executive Board. A hearing was held on May 15, 1990. The appeal was denied on August 30, 1990. Robinson did not appeal to the last step, the UAW's Public Review Board. Instead, Robinson filed a complaint in federal court on November 1, 1990, against Central

Brass and the Union. Robinson alleged that the Union breached its duty of fair representation. Robinson alleged that Central Brass unfairly discharged her in violation of section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* the Civil Rights Act of 1871, 42 U.S.C. § 1981; and an Ohio state statute prohibiting employers from discharging employees in retaliation for filing workers' compensation claims, Ohio Rev.Code Ann. § 4123.90 (Baldwin 1982). Robinson sought reinstatement in her job and monetary damages.

On April 11, 1991, the district court granted Central Brass's motion for summary judgment. Of specific importance for this appeal was the district court's finding that the hybrid § 301/fair representation claim was barred by a six-month statute of limitations. On December 19, 1991, the court granted the Union's motion for summary judgment.

On appeal, Robinson only challenges the district court's ruling that the hybrid § 301/fair representation claim was barred by the six-month statute of limitations. Robinson did not oppose either Appellee's motion for summary judgment on the remaining claims and has not briefed those issues on appeal.

## II

As with many federal statutes, Congress did not provide a specific statute of limitations for § 301 claims. Nor has Congress prescribed a statute of limitations for claims that a union breached its duty of fair representation to its members. In fact, the duty of fair representation is not an express creation of Congress; the Supreme Court has found that "it is implied under the scheme of the National Labor Relations Act." *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983); *see also Vaca v. Sipes,* 386 U.S. 171, 182, 87 S.Ct. 903, 912, 17 L.Ed.2d 842 (1967).

When no statute of limitations is provided, courts generally assume that Congress intended the courts to borrow the statute of limitations for the most closely analogous state law claim. *DelCostello,* 462 U.S. at 158, 103 S.Ct. at 2281. The Supreme Court, however, has recognized a limited exception to the general rule when the state statute of limitations conflicts with the federal interests and congressional purposes of the federal statute. 462 U.S. at 161, 103 S.Ct. at 2289. In its search for the appropriate statute of limitations for hybrid § 301 claims, the Supreme Court turned to the National Labor Relations Act ("NLRA"), which it described as "actually designed to accommodate a balance of interests very similar to that at stake here— a statute that is, in fact, an analogy to the present lawsuit more apt than any of the suggested state law parallels." 462 U.S. at 169, 103 S.Ct. at 2293. The Court identified the balance of interests present in both the hybrid § 301 claim and NLRA claims as "the proper balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interests in setting aside what he views as an unjust settlement under the collective-bargaining system." 462 U.S. at 171, 103 S.Ct. at 2294 (quoting *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 70, 101 S.Ct. 1559, 1568, 67 L.Ed.2d 732 (1981)). In addition, the Court found that a union's breach of the duty of fair representation has an undeniable "family resemblance" to and "substantial overlap" with unfair labor practices covered by NLRA. 462 U.S. at 170, 103 S.Ct. at 2293–94. Similarly, the Court determined that employers' violations of a collective-bargaining agreement under § 301 may also amount to unfair labor practices under NLRA. 462 U.S. at 170, 103 S.Ct. at 2294. Therefore, the Court borrowed the six-month statute of limitations of NLRA § 10(b).

■ The Supreme Court, however, did not address the issues of when a cause of action accrues in a hybrid § 301 claim and when the statute of limitations begins to run. These issues are complicated by the unique nature of a hybrid § 301 claim. It is, in fact, the consolidation of two separate but interdependent actions: one against the

employer for breach of the collective-bargaining agreement and one against the union for breach of the duty of fair representation. Before an employee may bring a § 301 claim against an employer for dismissing him in violation of the collective-bargaining agreement, the employee first must exhaust any grievance or arbitration remedies provided in the collective-bargaining agreement. The employee will be bound by the results of that grievance process unless the union representing the employee breaches its duty of fair representation. If the union does breach its duty, then the employee may bring either a § 301 claim against the employer or a claim against the union for breach of the duty of fair representation, or both claims simultaneously. To prevail under any claim, the employee must show both that the employer discharged him in violation of the collective-bargaining agreement *and* that the union breached its duty of fair representation during the grievance process. Therefore, the two claims are often combined in a single lawsuit and referred to as a hybrid § 301/fair representation claim. *See DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 163–65, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476 (1983).

In general, "[a] claim accrues ... when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Adkins v. International Union of Electrical, Radio & Machine Workers,* 769 F.2d 330, 335 (6th Cir.1985); *see also Jones v. General Motors Corp.,* 939 F.2d 380, 384 (6th Cir.1991). In *Proudfoot v. Seafarer's International Union,* 779 F.2d 1558, 1560 (11th Cir.1986), the Eleventh Circuit ruled that the separate causes of actions in a hybrid § 301/fair representation claim accrue simultaneously, and that "the timeliness of the suit must be measured from the date on which the employee knew or should

have known of the union's final action or should have known of the employer's final action, whichever occurs later." *Ibid.*

■ Following this rule, Robinson's cause of action against both defendants accrued on November 17, 1989, when the deadline for requesting arbitration passed without action by the Union. However, this does not necessarily mean that the statute of limitations began to run on November 17, 1989. Robinson contends that the six-month limitations period for the claims against both defendants did not begin until she exhausted her internal union appeals. In the alternative, Robinson argues that the limitations period should be equitably tolled because the Union and Central Brass conspired to mislead her into thinking that the internal appeals process could provide complete relief.[1] Although the causes of actions against both defendants accrued simultaneously, it does not necessarily follow that the statutes of limitations for the two interdependent claims began to run simultaneously. Therefore, we will address the merits of Robinson's tolling arguments on each claim separately.

## III

### A

The district court rejected Robinson's argument that the limitations periods for both actions were not running while she pursued the internal union appeals mentioned in the union's letter. The district court reasoned that the union appeals process was optional and not mandatory because it could not provide Robinson with complete relief from either defendant. Therefore, since Robinson was not required to exhaust the union appeals process before filing suit in federal court, the statute of limitations was not tolled against either defendant.

---

1. Robinson also urges this court to declare the six-month statute of limitations set forth by the Supreme Court in *Delcostello* to be "so short as to constitute a violation of a union member's right to due process under the Amendment XIV of the U.S. Constitution." We cannot address this issue. First, the issue was not raised below. *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct.

2868, 2877, 49 L.Ed.2d 826 (1976) ("It is a general rule ... that a federal appellate court does not consider an issue not passed on below."). More important, we have no authority to overrule the Supreme Court. *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260 (1983).

The district court relied exclusively on *Clayton v. International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981), and *Smith v. Expert Automation, Inc.*, 726 F.Supp. 1080 (E.D.Mich.1988). The facts in *Clayton* are very similar to the facts in this case. Clayton was discharged by ITT Gilfillan (ITT) for violating a well-defined plant rule. The union filed a grievance on Clayton's behalf, and ITT denied the grievance. The union initially requested arbitration, but then withdrew the request. The union informed Clayton by letter that the union chose not to request arbitration. Like the letter in the instant case, Clayton's letter also contained a copy of section 33 of the UAW constitution and notification of the requirement that he exhaust all internal union appeals before seeking redress from a civil court or government agency. Also like the instant case, pursuant to the collective-bargaining agreement between the union and ITT, the internal union appeals procedure could not result in either Clayton's reinstatement or reactivation of his grievance.

Unlike Robinson, Clayton chose not to file an internal appeal and instead went directly to federal court with a hybrid § 301/fair representation claim against ITT and the union. ITT and the union argued for dismissal on the ground that Clayton had not exhausted his internal union remedies.

The Supreme Court began its analysis by recognizing that Clayton's claim highlighted a conflict between the federal policy requiring that a judicial forum be available to enforce the duty of fair representation and the policy of encouraging private resolution of disputes. The Court emphasized that district courts have discretion to decide whether to require exhaustion and enumerated three factors to be considered in exercising that discretion:

> [F]irst, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's

grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.

*Id.* 451 U.S. at 689, 101 S.Ct. at 2095. Highlighting the second factor, the Supreme Court ruled "that where an internal union appeals procedure cannot result in reactivation of the employee's grievance or an award of the complete relief sought in his § 301 suit, exhaustion will not be required with respect to either the suit against the employer or the union." *Id.* at 685, 101 S.Ct. at 2093.

The union argued that since the monetary damages remedy sought in the claim against it could be achieved in the internal appeals process, exhaustion still should be required for the related claim against it. The Court rejected this argument. If it permitted the action to proceed against the employer and required exhaustion as to the union, two § 301 suits based on the same facts would be proceeding through the courts at different paces. Therefore, the Court concluded that the most efficient procedure would be to allow the § 301 action to proceed against the union as well. *Id.* at 694–95, 101 S.Ct. at 2098.

The *Clayton* Court did not address the question of whether the statute of limitations should be tolled if a discharged employee chose to pursue the appeals process before filing a hybrid § 301/fair representation claim. In *Smith v. Expert Automation, Inc.*, 726 F.Supp. 1080 (E.D.Mich. 1988), the district court, when faced with this issue, ruled that the reasoning in *Clayton* led to the conclusion that the statute of limitations should be tolled only when the internal appeals process can provide a complete remedy. The claim arose from an alleged breach by Expert Automation of the seniority provisions of the collective-bargaining agreement and the subsequent refusal of the union to represent the plaintiff in the grievance process. *Smith* at-

tempted to exhaust his internal appeals against the union for monetary damages before suing the union and Expert Automation in federal court. Like the instant case, the internal appeals process could not provide the plaintiff with complete relief against the employer. *Id.* at 1081. The court ruled that "the plaintiff could neither have reactivated his grievance nor obtained complete relief through intra-union proceedings, and therefore, since the intra-union remedies are optional, the case must be dismissed as untimely under the applicable statute of limitations." *Id.* at 1082–83. The court explained its rejection of the tolling option, reasoning that if tolling were allowed:

> [A] plaintiff could opt for an internal procedure insufficient to conclude in complete relief, and dependent on the outcome, either relitigate the entire dispute or simply seek a judicial determination of the issue omitted from the union proceeding. Obviously, such a system is contrary to a policy favoring speedy resolution of labor disputes.

*Id.* at 1081.

In *Frandsen v. Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees,* 782 F.2d 674 (7th Cir.1986), the Seventh Circuit followed the reasoning in *Clayton* to a different conclusion, ruling that "the *DelCostello* statute of limitations is tolled by the pursuit of internal union remedies, even where those remedies are ultimately determined to have been futile." *Id.* at 681. In 1982, Frandsen was an employee with thirty-eight years of seniority with Consolidated Rail Corporation ("Conrail"). That year, Missouri Pacific Railroad Company ("MOPAC") purchased from Conrail the stretch of track on which Frandsen and eight other Conrail employees worked. The Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees ("Union"), which represented the employees of both companies, presented Frandsen and the eight other employees with the choice of either remaining in their present jobs and switching employers or remaining with their present employer and moving to a new work station. Frandsen chose to remain in the same job and switch employment to MOPAC. Frandsen made this choice because he understood that he would retain his seniority status. However, at the time Frandsen had to make his choice, the collective-bargaining agreement had not been completed yet. When the agreement was completed, Frandsen lost all of his seniority status and began work for MOPAC as its most junior employee.

Frandsen immediately protested the terms of the agreement by filing an internal union appeal. However, he did not sue the union for breach of its duty of fair representation until March 7, 1984, almost two years after the agreement was completed, but less than six months from the conclusion of the internal union appeals process. The district court followed the same analysis as the court in *Smith,* concluding that Frandsen's claim was barred by the statute of limitations. The court succinctly stated its reasoning: "if the plaintiff reaps the benefit from the no exhaustion rule, he must also pay the costs." *Frandsen v. Brotherhood of Railway, Airline and Steamship Clerks,* 601 F.Supp. 941, 944 (S.D.Ill.1985).

The Seventh Circuit overruled the district court and held that Frandsen's claim against the union was not barred by the statute of limitations even if the internal union appeals procedure could not provide him with complete relief. The Seventh Circuit listed four reasons supporting its conclusion.

First, the court stated that a "no tolling" rule would contravene the dual federal policy of promoting private resolution for disputes through internal union remedies and ensuring a judicial forum to resolve disputes. The court stressed that in *Clayton* the Supreme Court did not disavow this goal, but only created a narrow exception to the general exhaustion requirement for situations where the internal remedies are futile. The court stressed that:

> This exception is designed to confer a benefit to the employee, and there is no language in *Clayton,* or in any other Supreme Court case, that suggests the

worker must pay a cost to get this benefit. It may even be unwise to call the *Clayton* exception a benefit when the worker has a right to a federal forum that Congress delays only for policy reasons.... [T]he core of the duty of fair representation is to protect the rights of individuals that are limited by the NLRA. *Clayton* was not designed to further frustrate access to a federal forum that the national labor policy already compromises.

*Id.* at 681. In other words, in *Clayton* the Supreme Court only ruled that, when complete relief is impossible, exhaustion of internal remedies is not required. The Court did not exclude internal remedies as an option. A ruling that the statute of limitations begins to run as soon as the grievance process breaks down would eliminate the option of internal remedies. The only viable option for an employee who does not want to forfeit access to the federal courts would be to forego the internal union appeals process and seek relief in federal court immediately.

Second, and closely related to the first reason, the Seventh Circuit feared that a "no tolling" rule would create an incentive for plaintiffs to bring suit in federal court before seeking internal union remedies as a cautionary measure. The ensuing "flood of cautionary litigation ... [would] undermin[e] the very policy behind the exhaustion rule." *Id.* at 684.

Third, the Seventh Circuit pointed out that in *Clayton* the Supreme Court did not divest the district courts of discretion to decide whether or not exhaustion is required under specific circumstances. On the contrary, the *Clayton* Court emphasized the importance of the district courts' discretion. Thus, although in hindsight it may be clear that a plaintiff's internal union remedy was futile, it is not always clear from the outset. Therefore, the Seventh Circuit concluded that "[w]hether or not ... [an] intraunion appeal was futile ... represents a distinction too problematic to be the determinative question in each case of this kind." *Id.* at 682.

Finally, the Seventh Circuit pointed out that an internal appeals process need not provide complete relief in order to be fruitful to the plaintiff or beneficial to the judicial system.

... [I]f partial relief is obtained, the marginal increase in relief obtained in litigation may not be worth the corresponding increase in expense and risk. The intraunion grievance system may also persuade the member that a claim is not so strong as it might have seemed, or may produce a genuine compromise. The pursuit of nonjudicial procedure may, if perceived as fair, have a conciliatory or therapeutic value that lessens the employee's perceived need to file suit.

*Id.* at 683.

### B

■ We find the majority of the reasoning in *Frandsen* persuasive. However, we part company with the Seventh Circuit on two crucial points. The Seventh Circuit held that "the statute of limitations is tolled by the pursuit of internal union remedies, *even where those remedies are ultimately determined to have been futile.*" *Id.* at 681 (emphasis added). We disagree. First, in order for the statute of limitations to be tolled, the internal union appeal must be able to afford the claimant *some* relief from the defendant. Tolling the statute of limitations while a claimant pursues *completely* futile internal union remedies does not serve the federal interests discussed in *DelCostello* and *Clayton* and is unfair to the defendant. On the other hand, we recognize that in some cases it may be difficult for an employee, even after the exercise of due diligence, to determine that the internal union remedies are completely futile and that this difficulty must be considered by the court. Second, we emphasize that whether to toll the limitations period is a question within the discretion of the district court. Thus, we are reluctant to set out bright line rules. Each case must be analyzed on its own facts in light of the three factors stressed in *Clayton* and the four-part test outlined in *Frandsen*.

### 1

■ With these principles in mind, we affirm the district court's holding that Robinson's claim against Central Brass was barred by the six-month limitations period. It is important to remember that following her discharge, Robinson sought relief in two private settlement processes. First, the Union filed a grievance on Robinson's behalf with Central Brass pursuant to the arbitration and grievance procedure set forth in the collective-bargaining agreement. This process could have provided Robinson with complete relief from Central Brass—reinstatement in her job. Thus, the limitations period was tolled until Central Brass denied the grievance and the Union did not request arbitration.

■ Robinson then appealed the Union's decision not to request arbitration in the internal union appeals process. Central Brass was not a party to this internal appeal, had not sanctioned or acknowledged the internal appeals process, and was not bound by any ensuing judgment. In fact, Central Brass has made clear in the collective-bargaining agreement that a successful internal union appeal can not lead to reinstatement of an employee or reactivation of a grievance. In general, a union member is responsible for knowing the contents of her collective bargaining agreement. *Shapiro v. Cook United, Inc.*, 762 F.2d 49, 51 (6th Cir.1985). Thus, it should have been clear to Robinson that when the Union chose not to request arbitration, the *only* private dispute mechanism that could have provided her with relief from Central Brass was exhausted and the limitations period began to run.

This conclusion is consistent with the federal policies implicated in labor cases concerning exhaustion of internal appeals. The federal interest in the swift resolution of labor disputes would not be served by tolling the limitations period in the § 301 suit against Central Brass while Robinson pursued internal appeals that could only provide relief from the Union. Likewise, the federal interest in the private settlement of labor disputes would not be furthered by tolling the limitations period while Robinson pursued a private settlement with the Union.

■ We recognize that Robinson misunderstood the nature of the possible internal remedies and thought that they included reinstatement. However, as we discuss below, this misunderstanding was caused solely by the Union's misrepresentations and cannot be linked to Central Brass's actions, statements, or policies. Therefore, we hold that Robinson exhausted all internal remedies for her claim against Central Brass when the Union failed to request arbitration and thus her § 301 claim against Central Brass is barred by the six-month statute of limitations period.

### 2

■ On the other hand, we reverse the district court's ruling that Robinson's claim that the Union breached its duty of fair representation is barred by the statute of limitations. Robinson's claim against the Union is distinguishable from the claim against Central Brass because although the internal appeals process could not provide complete relief, it clearly provided the possibility of partial relief from the Union in the form of monetary damages. Therefore, the internal appeals process did provide the opportunity for a private settlement of the claim against the Union. Also, even if the internal appeal proved unsuccessful, it could still be beneficial to the judicial system. As the Seventh Circuit pointed out in *Frandsen,* an unsuccessful internal appeal may convince a union member that her claim lacks merit, may produce a compromise, and may have other conciliatory value that could lessen a member's desire to file suit in federal court. *Frandsen,* 782 F.2d at 683.

Our holding that Robinson's claim against the Union is not time-barred is consistent with our holding in *Dunleavy v. Local 1617, United Steelworkers,* 814 F.2d 1087 (6th Cir.1987). There, Dunleavy was expelled from the office of recording secretary and suspended from holding elective office for five years because he had allegedly violated provisions of the union constitution. We ruled that the limitations peri-

od was tolled while Dunleavy pursued internal remedies, even though we concluded that internal exhaustion was not mandatory. *Id.* at 1090.

In reaching this conclusion, we stressed that, as in the present case, the union constitution and by-laws required Dunleavy to exhaust all internal appeals and remedies before instituting an action in federal court. We concluded: "It is a dubious position that the union takes when it asserts that it was only extending an optional appeal path for its members to choose and then penalizing the union member if the 'optional' appeal was not chosen." *Ibid.* In this case, pursuant to the union by-laws, Robinson could have been penalized, and even expelled, for filing suit in federal court before exhausting the internal appeals process. Therefore, the reasoning in *Dunleavy* is particularly applicable to Robinson's predicament.

In *Dunleavy,* we also stressed that tolling the statute of limitations was consistent with the general purposes of statutes of limitations. In *Burnett v. New York Central R.R.,* 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1968), the Supreme Court explained that statutes of limitations "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Like Dunleavy, Robinson diligently pursued through the internal appeals process the same claims that she now brings in federal court. Therefore, the Union cannot claim that it lacked notice as to the nature of Robinson's claim or that the relevant evidence is no longer extant. *See id.* at 1090–91.

Finally, our objection in *Dunleavy* to the Union's argument that the limitations period should run while a member pursues internal remedies bears repeating:

> The Union's position would seem to require one placed in Dunleavy's situation to file a lawsuit which would become superfluous in the event of favorable Convention action simply as a matter of protection. In addition to other practical objections to such filings, we feel constrained to point out that we would be loath to require further cluttering up the docket of the overburdened federal judicial system for such a contingent purpose.

*Id.* at 1091.

A ruling that Robinson's claim against the Union is time-barred would undermine the federal policy of promoting private resolution of disputes while ensuring a judicial forum to resolve disputes. Therefore, we hold that the statute of limitations period for Robinson's claim against the Union was tolled while Robinson pursued internal union remedies. We stress again that in this case the fair representation claim against the Union is distinguishable from the § 301 claim against Central Brass. The internal appeals process could have provided Robinson with partial relief from the Union. In contrast, the internal appeals process could not provide *any* relief from Central Brass. Also, the Union was involved directly in the internal appeals process and even required, in the strongest terms, that Robinson pursue internal remedies before instigating a federal suit. In contrast, Central Brass had no involvement with and refused to recognize the internal appeals process.

IV

■ Robinson also alleges that the Union acted in bad faith, committed fraud, and engaged in a continuing conspiracy with Central Brass to misled her into thinking that the internal appeals process could provide complete relief. This court has recognized that a statute of limitations should be tolled if a defendant fraudulently concealed any facts respecting the accrual or merits of a plaintiff's claim. *Shapiro v. Cook United, Inc.,* 762 F.2d 49, 51 (6th Cir.1985). In order to prove fraudulent concealment, a plaintiff must show "that he failed to discover facts that serve as the basis of his cause of action despite due diligence on his part to discover the facts, and that the concealment was fraudulently committed by the parties sought to be held responsible by the plaintiff." *Ibid.*

There is ample evidence that the Union misled Robinson about both the possible remedies of an internal appeal and the necessity to pursue internal remedies before instigating an action in federal court. In the November 9, 1989 letter, the Union provided Robinson with the option of pursuing her claim further through an internal appeal. The Union even provided Robinson with the relevant section of the Local UAW by-laws and the UAW constitution. The Union, however, left out critical information. It did not advise Robinson that such an appeal would be futile with respect to the primary remedy she sought—getting her job back. Nor did the Union reveal that it *could* (and ultimately would) claim that the internal appeal procedure it was demanding was also exhausting her time to sue and thus barring the only efficacious route to the goal of reinstatement. On December 28, 1989, Robinson informed the Union by letter that she wanted to exercise her right to appeal the Union's decision not to advance her grievance to arbitration. She specifically listed as the remedies she sought "arbitration of the decision to discharge me for absenteeism" and "reinstatement with back pay." The Union did not correct Robinson's misunderstanding of the possible internal remedies; instead, it simply processed her appeal.

Moreover, the Union explicitly warned Robinson that pursuant to the by-laws she would be subject to discipline and even summary expulsion if she filed a suit in federal court before exhausting internal remedies. At oral argument, counsel for the Union claimed that these provisions are rarely enforced and that in reality Robinson was free to file suit in federal court before exhausting internal remedies without fear of discipline or retaliation. This may be true, and apparently Robinson was not disciplined when she filed suit in federal court before exhausting the final step of the internal appeals process. However, the Union's letter of November 9, 1989, and the union by-laws describe a very different picture of Robinson's options—pursue internal remedies first or risk summary expulsion from the Union.

Because we have already held that the statute of limitations for Robinson's claim against the Union was tolled while she exhausted her intraunion remedies, we need not decide whether the Union's misleading conduct rose to the level of fraudulent concealment. Also, the Union's actions do not change our conclusions with respect to the claims against Central Brass. The Union's actions cannot be imputed to Central Brass, and misrepresentations made by third parties cannot be the basis for equitable tolling against a defendant. *Geromette v. General Motors Corp.*, 609 F.2d 1200, 1203 (6th Cir.1979). Robinson has made no allegations of misrepresentation by Central Brass other than vague charges of conspiracy with the Union that are not supported by any evidence. Moreover, the collective-bargaining agreement between Central Brass and the Union clearly states the limited circumstances under which a withdrawn grievance will be reinstated:

> If the Company and the Union mutually agree that an employees' [sic] grievance was improperly withdrawn from the grievance procedure by the Union, or any agency or court decides that an employees' [sic] grievance was improperly withdrawn, the grievance shall be reinstated in the grievance procedure at the step from which it was withdrawn.

Therefore, because Central Brass made no misrepresentations to Robinson and clearly stated the circumstances under which it allows reinstatement of improperly withdrawn grievances, the statute of limitations in Robinson's claim against Central Brass should not be equitably tolled. We point out that the dismissal of Robinson's claims against Central Brass does not preclude Robinson from achieving her ultimate goal of reinstatement. If, on remand, the district court were to find that Robinson's grievance was improperly withdrawn, Central Brass will be bound by the collective-bargaining agreement to allow the grievance to be reinstated and to continue into arbitration.

**1246**

**V**

For the foregoing reasons, we AFFIRM the district court's dismissal of all claims against Central Brass, and we REVERSE the district court's dismissal of the fair representation claim against the Union and REMAND for proceedings consistent with our decision.