12-3630-cv
*Kalyanaram v. Am. Ass'n of Univ. Professors at The N.Y. Inst. of Tech., Inc.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2012

(Argued: June 26, 2013                    Decided: February 3, 2014)

Docket No. 12-3630-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

GURUMURTHY KALYANARAM,

                    *Plaintiff-Appellant*,

              v.

AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS AT THE NEW YORK INSTITUTE
OF TECHNOLOGY, INC.,

                    *Defendant-Appellee*,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Before: NEWMAN, WINTER and DRONEY, *Circuit Judges*


        Employee brought action alleging that his union breached its duty of fair representation, but the district court dismissed it as untimely. We hold that the employee's claim against the union accrued when the arbitrator issued his final award, notwithstanding language in the collective bargaining agreement that such awards were subject to challenge in court by either party. Also, the limitations period was not tolled by the employee's state court action to vacate the arbitrator's award. Accordingly, we AFFIRM the judgment of the district court.

DAVID T. AZRIN, Gallet Dreyer & Berkey, LLP, New York, New York, *for Appellant*.

AMELIA K. TUMINARO, Gladstein, Reif & Meginniss, LLP, New York, New York, *for Appellee*.

DRONEY, *Circuit Judge*:

Gurumurthy Kalyanaram ("Kalyanaram") brought this action against his union, the American Association of University Professors at the New York Institute of Technology, Inc. ("the Union"), alleging that it breached its duty of fair representation. The district court granted the Union's two motions for partial judgment on the pleadings and then entered judgment in favor of the Union based on those rulings. We address: (1) whether the statute of limitations on a claim that a union breached its duty of fair representation commences upon the issuance of the arbitrator's "final award," where the collective bargaining agreement provides that the arbitrator's decision shall be final and binding "subject to appeal by either party," and (2) whether a state court action to vacate the arbitration award tolls that limitations period.

# BACKGROUND

The allegations in the complaint and the additional materials submitted in connection with the motions before the district court allege the following.[1] Kalyanaram was a professor in the School of Management at the New York Institute of Technology ("NYIT"), and a member of the Union. A number of students at NYIT's MBA program in Vancouver, Canada, sent a letter to the NYIT administration complaining of sexual harassment and racial discrimination by Kalyanaram. NYIT investigated and issued Kalyanaram a letter of termination in May 2007. NYIT issued a second termination letter in July 2007 based on complaints of misconduct by Kalyanaram submitted by students at its New York City campus.

Kalyanaram challenged his termination through arbitration, as provided for in the Union's collective bargaining agreement ("CBA"). On August 6, 2008, the arbitrator issued an award that dismissed the most serious allegations against him concerning the Vancouver students, but held that the allegations had sufficient merit to give NYIT just cause to suspend Kalyanaram for a semester.

---

[1] In ruling on a 12(b)(6) motion, and thus on a 12(c) motion, a court may consider the complaint as well as "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference." *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001) (internal quotation marks omitted). Moreover, "on a motion to dismiss, a court may consider . . . matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted).

3

The arbitrator scheduled a hearing for September 29, 2008 to address the New York students' allegations. However, the hearing turned to a number of anonymous emails that Kalyanaram allegedly sent criticizing the NYIT administration. When NYIT questioned him about these emails, he denied sending them. A month later, NYIT produced documents with Kalyanaram's IP addresses purporting to show that he had sent the emails from two email accounts. Another arbitral hearing was held on October 24, 2008, and the same day, NYIT issued a third termination letter based on the emails. Kalyanaram grieved this dismissal letter through the Union as well.

The arbitration culminated in a decision on August 13, 2009—entitled "Interim Award of Arbitrator"—in which the arbitrator found that there was just cause under the CBA to terminate Kalyanaram, though he would be allowed to remain on research leave for one year with full pay while seeking new employment. NYIT was also required to provide a "neutral reference" and "not disparage Professor Kalyanaram to potential employers." Kalyanaram moved to reconsider this decision, but on October 13, 2009, the arbitrator issued what was entitled a "Final Award of Arbitrator" ("Final Award"), which adopted the August 13, 2009 award. In the Final Award, the arbitrator specifically retained the authority to implement it.

4

Kalyanaram then filed a petition pursuant to N.Y. C.P.L.R. § 7511 in the New York Supreme Court to vacate the Final Award. On June 2, 2010, that court denied his petition and granted NYIT's cross-motion to confirm the award. Kalyanaram appealed to the New York Supreme Court's Appellate Division, First Department, but it affirmed the trial court on December 2, 2010. *Kalyanaram v. N.Y. Inst. of Tech.*, 913 N.Y.S.2d 159 (App. Div. 2010).[2]

While he was contesting the Final Award in state court, Kalyanaram also made various submissions to the arbitrator challenging the manner in which NYIT had implemented the award by failing to send timely letters of reference and by mischaracterizing the circumstances of his termination. Through the period of the spring of 2010 to the spring of 2011, there was a series of requests by Kalyanaram's counsel to the arbitrator to have NYIT issue the letters of recommendation, correct mischaracterizations to potential employers of the reasons for his termination, and pay Kalyanaram the amounts ordered. Through a series of "supplemental awards," the arbitrator resolved these disputes over the references, and extended partial salary for Kalyanaram because of delays he faced in obtaining new employment due to the dispute over the reference letters.

---

[2] Kalyanaram's motion for leave to appeal to the New York Court of Appeals was denied on October 18, 2011. *Kalyanaram v. N.Y. Inst. of Tech.*, 957 N.E.2d 1156 (N.Y. 2011).

On September 7, 2010, while Kalyanaram's petition to vacate the award was still pending in state court, he filed the instant complaint against the Union. It alleged that the Union breached its duty of fair representation in various ways during the arbitration. Kalyanaram claimed that the Union failed to represent him adequately during the hearings, and prevented his personal counsel from fully participating in the hearings. The complaint also alleged unrelated breaches in connection with the Union's refusal to pursue a grievance against NYIT for violating Kalyanaram's intellectual property rights by seizing and not returning his personal papers and effects.

On March 21, 2011, the Union filed a motion in the district court for partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The district court (Batts, *J*.) granted the motion by order of March 13, 2012. *See Kalyanaram v. Am. Ass'n of Univ. Professors at the N.Y. Inst. of Tech., Inc.*, No. 10 Civ. 6616 (S.D.N.Y. Mar. 13, 2012). The order dismissed Kalyanaram's claim of breach of the duty of fair representation as time-barred insofar as it concerned the Union's conduct during the arbitration of his termination, but allowed him to proceed on his claim against the Union for failing to grieve the alleged harm to his intellectual property rights. On August 9, 2012, the district court dismissed Kalyanaram's remaining claim against the Union, holding that

he was collaterally estopped by the outcome of another state court action from arguing that the Union had neglected to pursue arbitration on the alleged intellectual property issues. Judgment was then entered against Kalyanaram. He brought the instant appeal on September 10, 2012, challenging only the district court's first order of March 13, 2012 concerning the termination aspect of his arbitration.

## DISCUSSION

This Court "review[s] a dismissal under [Federal Rule of Civil Procedure] 12(c) using the same *de novo* standard applicable to dismissals pursuant to [Federal Rule of Civil Procedure] 12(b)(6)." *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005). An employee's claim against a union for breaching its duty of fair representation (a "DFR claim") is a cause of action "implied under the scheme" of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151-169. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 & n.14 (1983). It is undisputed that the limitations period for filing such a claim in the district court is borrowed from section 10(b) of the NLRA, 29 U.S.C. § 160(b), which provides for a six-month limitations period. *DelCostello*, 462 U.S. at 169; *see also Demchik v. Gen. Motors Corp.*, 821 F.2d 102, 105 (2d Cir. 1987).

7

The primary question here is when Kalyanaram's DFR claim accrued. "In this circuit, it is well settled that the cause of action accrues no later than the time when plaintiffs *knew* or reasonably *should have known* that such a breach of the duty of fair representation had occurred, even if some possibility of nonjudicial enforcement remained." *Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 67 (2d Cir. 1995) (internal quotation marks and alterations omitted; emphasis added). Where a union purports to fulfill its duty of fair representation during the hearing process, the requisite knowledge generally will not be inferred prior to the issuance of an arbitral award. *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 165 (2d Cir. 1989). As we have explained, "the employee is entitled, during the hearing process, to trust in the abilities of her representative . . . at least until an adverse arbitral decision suggests otherwise"; therefore, "[k]nowledge of the breach by the Union will not be attributed to [the employee] prior to the issuance of the award." *Id.* (internal quotation marks and alterations omitted). Since the gravamen of Kalyanaram's complaint is that the Union failed to adequately represent him during the arbitration, his DFR claim "accrue[d] on the date of the award." *Santos v. Dist. Council of N.Y.C. & Vicinity of United Bhd. of Carpenters & Joiners of Am., AFL-CIO*, 619 F.2d 963, 969 (2d Cir. 1980).

Kalyanaram presents two arguments that his DFR claim is timely, even though it was filed in the district court almost eleven months after the arbitrator's "Final Award" of October 13, 2009. The first is based on the action that was pending in New York state court through 2011. The second is that the "Final Award" was not final, given that the arbitrator continued to issue additional orders into 2011. We address each argument in turn.

**I.      The Effect of the State Court Proceedings to Vacate the Award**

Kalyanaram's first argument is two-pronged. He argues first that his DFR claim did not accrue, and the limitations period did not start to run, until the arbitrator's award was confirmed in state court. In the alternative, he argues that even if his claim *did* accrue when the arbitrator's award issued, the limitations period was tolled during the state court proceedings.

*A.  Accrual*

Kalyanaram claims that because of language in the CBA, his DFR claim did not accrue until the state court denied his motion to vacate the Final Award. Article XXIII(5)(g) of the CBA states that "[t]he decision of the arbitrator shall be final and binding subject to appeal by either party to the applicable court." Thus, Kalyanaram argues, "the grievance and arbitration process is not considered over until such judicial confirmation" of the award has taken place.

Kalyanaram's reading of Article XXIII(5)(g) is incorrect. The arbitrator's award was final and binding when it issued on October 13, 2009 and was denominated a "Final Award." The CBA simply recognized that arbitral awards may subsequently be confirmed or vacated by a court. Although Kalyanaram objects that this reading would render the "subject to appeal" clause meaningless, the clause, even if unnecessary, avoids any controversy as to the parties' pre-existing right to appeal an arbitration award.

The decisions on which Kalyanaram relies for his interpretation of the "subject to appeal" clause are inapposite. In *Edwards v. International Union, United Plant Guard Workers of America (UPGWA)*, although the Tenth Circuit held that a plaintiff's DFR claim accrued only after he was notified that the district court dismissed his union's suit against the employer to obtain arbitration, the union in *Edwards* affirmatively "led [the plaintiff] to believe it could obtain arbitration on the merits of his grievance" by pursuing a judicial appeal. 46 F.3d 1047, 1054 (10th Cir. 1995). There is no claim here that the Union in this case led Kalyanaram into believing that the arbitrator's award upholding his termination was anything but final or that further arbitration on the merits was permitted. *Cf. King v. N.Y. Tel. Co.*, 785 F.2d 31, 34-35 (2d Cir. 1986) (noting that an employee's reasonable reliance on union representations regarding the likely

availability of arbitration would extend the accrual date of the employee's DFR claim).

*Hester v. International Union of Operating Engineers* is similarly unhelpful to Kalyanaram since it held that a DFR claim, as well as claims under the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(5), do not accrue until a union's *internal* appeal procedures have been exhausted. 818 F.2d 1537, 1548 (11th Cir. 1987) (per curiam), *vacated on other grounds*, 488 U.S. 1025 (1989). While exhaustion of the internal arbitration procedures provided by the CBA might under some circumstances be required before claims against a union or an employer may be brought in court, *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-53 (1965), Kalyanaram offers no authority that supports his view that his CBA provides that DFR claims do not accrue while a judicial action to confirm or vacate a final arbitration award is pending.

*B. Tolling*

Kalyanaram also argues that even if his action in state court to vacate the arbitrator's award did not prevent his DFR claim from accruing, the state court action tolled the six-month limitations period.

As mentioned above, the applicable statute of limitations for Kalyanaram's DFR claim is based in federal law: section 10(b) of the National Labor Relations

11

Act, 29 U.S.C. § 160(b), as required by *DelCostello*, 462 U.S. at 169. In light of *DelCostello*'s holding that a federal, rather than state, limitations period applies to claims such as Kalyanaram's, federal tolling rules must apply here as well. *See* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4519 (2d ed. 2013) ("[S]tate tolling provisions . . . are inapplicable when a statute of limitations is borrowed from another federal statute.").

The question of whether the statute of limitations on a DFR claim is tolled during litigation in state court to confirm or set aside an arbitration award is one of first impression in this Circuit.[3]

Although equitable tolling of limitations periods has been recognized in other contexts where pursuing a separate administrative remedy is a precondition to filing suit, *see, e.g.*, *Mt. Hood Stages, Inc. v. Greyhound Corp.*, 616 F.2d 394, 400, 406 (9th Cir. 1980) (holding that proceedings before Interstate Commerce Commission equitably toll the Clayton Act limitations period), no such tolling is available where an optional, parallel avenue of relief is pursued. *See Conley v. Int'l Bhd. of Elec. Workers, Local 639*, 810 F.2d 913, 915-16 (9th Cir. 1987) (holding that pursuing a claim before the National Labor Relations Board does not toll an

---

[3] Kalyanaram argues that *DelCostello*, 462 U.S. at 172, permits the statute of limitations to be tolled under some circumstances. However, the *DelCostello* Court elected not to address the petitioner's tolling argument, and instead remanded for consideration of that issue by the district court. *Id.* Thus, *DelCostello* took no position on the issue of tolling.

action alleging that the union acted unfairly toward union members); *Arriaga-Zayas v. Int'l Ladies' Garment Workers' Union-Puerto Rico Council*, 835 F.2d 11, 14 (1st Cir. 1987) (noting that courts have "historically been reluctant to invoke tolling in circumstances where a claimant rides parallel horses in search of relief"); *Harris v. Alumax Mill Prods., Inc.*, 897 F.2d 400, 404 (9th Cir. 1990) (emphasizing that courts are "reluctant to invoke tolling where a plaintiff is tardy in pursuing a parallel avenue of relief").

The Fourth Circuit's decision in *Kolomick v. United Steelworkers of America, District 8, AFL-CIO*, 762 F.2d 354 (4th Cir. 1985) is instructive in describing this distinction. Plaintiff Kolomick's union grieved his termination, but subsequently informed Kolomick that it would not pursue the matter to arbitration. *Id.* at 355. Five months later, Kolomick filed a charge with the National Labor Relations Board ("NLRB"), claiming that the union's refusal to arbitrate constituted an unfair labor practice. *Id.* When this claim subsequently failed, Kolomick initiated a "hybrid" action in federal court for the violation of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and the duty of fair representation, although more than nine months had elapsed since he learned of the union's refusal to arbitrate. *Id.* at 355-56. Kolomick argued that his NLRB claim tolled the applicable six-month limitations period. *Id*.

13

The Fourth Circuit, however, rejected this argument because "tolling has been held not to apply in situations where a plaintiff pursues parallel avenues of relief." *Id.* at 356. The court based its conclusion on three grounds. First, since claims of unfair labor practices brought before the NLRB "may be pursued independently from those brought pursuant to § 301," the court was "not faced with a unitary statutory scheme mandating administrative action before suit can be brought in a federal forum." *Id.* at 356-57. Second, "[t]he purposes of the two avenues of relief also differ." *Id.* at 357. Finally, the court's conclusion was "in harmony with the salutary policy favoring the prompt resolution of labor disputes." *Id.* (citing *DelCostello*, 462 U.S. at 168).

The same considerations compel the conclusion that Kalyanaram's suit in New York state court to vacate his arbitration award was a "parallel" avenue of relief to his DFR claim and thus did not toll the applicable limitations period. First, a suit to vacate an arbitration award in state court may be pursued independently of a DFR claim against a union: success in Kalyanaram's petition to vacate the arbitration award was not a prerequisite to bringing a DFR claim against the union. Like the Fourth Circuit in *Kolomick*, we are "not faced with a unitary statutory scheme" requiring the exhaustion of other remedies "before suit can be brought in a federal forum." *Id.* at 356-57. Second, the purposes of

14

the two avenues of relief differ. While a petition such as Kalyanaram's to vacate an arbitration award under N.Y. C.P.L.R. § 7511 provides relief for a narrow set of possible defects in the arbitration process (*e.g.* corruption, fraud or partiality on the part of an arbitrator), a DFR claim aims to remedy violations of "the duty of the representative organization 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *DelCostello*, 462 U.S. at 164 & n.14 (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). As a result, "the diverse nature of the two possible avenues of relief counsels strongly against" concluding that Kalyanaram's petition in state court tolled the limitations period on his DFR claim. *Kolomick*, 762 F.2d at 357. Also, as in *Kolomick*, this result is "in harmony with the salutary policy favoring the prompt resolution of labor disputes." *Id.*

Kalyanaram argues that his view is supported by the Fourth Circuit's decision in *Trent v. Bolger*, 837 F.2d 657 (4th Cir. 1988). Trent was a discharged postal worker whose union filed an untimely grievance on his behalf. *Id.* at 658. Since further arbitration was unlikely to succeed, he elected to "appeal his discharge to the MSPB," *i.e.*, the federal Merit System Protection Board, as was his right as a military veteran. *Id.* After the MSPB dismissed his appeal, he brought a direct

15

appeal of the MSPB decision in the Federal Circuit, which was dismissed several years later.[4] *Id.* Several months after this, Trent brought a hybrid claim against the Postmaster General and his union, the latter as a DFR claim. *Id.* The district court granted summary judgment to the union on the ground that "the action was barred by the applicable six-month statute of limitations." *Id.*

Applying the test from *Kolomick*, the Fourth Circuit reversed and concluded that the MSPB proceedings were "not a parallel avenue of relief." *Id.* at 659. The court noted that "[t]he grievance procedure and the MSPB could not be pursued independently because the collective bargaining agreement specifically prohibited [employees in Trent's position] from pursuing both avenues of relief." *Id.* Moreover, "the purposes of the two avenues of relief did not differ," since they both "focused on . . . whether the employee should have been discharged." *Id.* Accordingly, the court concluded that the "the six-month statute of limitations [on Trent's claim] was tolled by [the MSPB] proceedings in the Federal Circuit Court." *Id.* at 659-60.

Although *Trent* did allow for tolling pending judicial review of the MSPB's decision, *Trent* does not apply here. First, the judicial review in *Trent* was part of

---

[4] Decisions of the MSPB are directly reviewable by the Federal Circuit pursuant to 5 U.S.C. § 7703, which contemplates review of the actual merits of the MSPB's decision. *See* 5 U.S.C. § 7703(c) (authorizing not only arbitrary and capricious review, but also review for whether the MSPB's decision was "unsupported by substantial evidence"); *Long v. Soc. Sec. Admin.*, 635 F.3d 526, 530 (Fed. Cir. 2011) (applying substantial evidence review to an appeal from the MSPB).

the same statutory scheme as the MSPB review that Trent was obligated to exhaust. Once Trent elected MSPB review, this became his exclusive avenue for relief. Trent's appeal to the Federal Circuit was merely part of his attempt to exhaust this statutory scheme of MSPB review. There is no comparable statutory relationship between Kalyanaram's arbitration proceeding and his attempt to judicially vacate the arbitrator's decision.

Second, the Federal Circuit review in *Trent* addressed substantially the same questions as the underlying MSPB decision. Although the Federal Circuit's review of MSPB decisions is deferential, it does examine the merits of the MSPB's decision. *See* 5 U.S.C. § 7703(c) (authorizing, *inter alia*, substantial evidence review). By contrast, the judicial review that Kalyanaram sought pursuant to C.P.L.R. § 7511 only provides for relief on narrow grounds concerning the integrity of the arbitration proceedings. *See* N.Y. C.P.L.R. § 7511(b) (listing specific grounds for vacating an arbitration award, such as corruption, fraud or partiality by the arbitrator); *In re Silverman (Benmor Coats)*, 461 N.E.2d 1261, 1266 (N.Y. 1984) (noting that an arbitrator's "award will not be vacated even though the court concludes that his interpretation of the agreement misconstrues or disregards its plain meaning or misapplies substantive rules of law, unless it is violative of a strong public policy, or is totally irrational").

17

Thus, Kalyanaram's petition to vacate the arbitrator's award constituted a request for relief that was not part of the same statutory scheme as the underlying arbitration, and addressed questions distinct from those addressed at the arbitration. *Trent*, therefore, does not alter our conclusion that Kalyanaram's petition in state court and his DFR claim were "parallel" avenues of relief. *Kolomick*, 762 F.2d at 357. As a result, the proceedings in state court did not toll the limitations period on Kalyanaram's DFR claim against his union. *Id.*[5]

**II.    Subsequent Arbitration Proceedings**

Kalyanaram also argues that his DFR claim is timely because the arbitrator's "Final Award" of October 13, 2009 was not actually *final*, since the arbitrator later issued supplemental awards. But these subsequent awards merely effectuated the Final Award provisions concerning employment references. *See Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its Local 537*, 47 F.3d 14, 16 (2d Cir. 1995) (per curiam) ("[R]eservation of jurisdiction over a detail like overseeing the precise amount of back pay owed does not affect the finality of an arbitrator's award."). Moreover, it was clear that this Final Award constituted the final decision of the arbitrator on whether Kalyanaram's

---

[5] Kalyanaram also relies on *Robinson v. Central Brass Manufacturing Co.*, 987 F.2d 1235 (6th Cir. 1993). However, it too is distinguishable because it only "h[e]ld that the statute of limitations period for [an employee's] claim against the Union was tolled while [he] pursued *internal* union remedies." *Id.* at 1244 (emphasis added). Kalyanaram was not pursuing internal union remedies, but rather external judicial relief.

18

termination was justified. The October 13, 2009 award bore the heading "Final Award," while the subsequent orders were only referred to as "Interim Order" or "Supplemental Award." The subsequent awards also did not fundamentally alter or modify the Final Award, but rather supplemented it in ways that were consistent with the final resolution of the dispute about his termination. *See* *Michaels v. Mariforum Shipping, S. A.*, 624 F.2d 411, 413 (2d Cir. 1980) ("In order to be 'final,' an arbitration award must be intended by the arbitrators to be their complete determination of all claims submitted to them."). Kalyanaram's DFR claim, therefore, accrued when the Final Award issued.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.