**Roger HOWELL, Plaintiff–Appellant,**

v.

**GENERAL MOTORS CORPORATION, UAW Local 969, Defendants–Appellees.**

No. 00–3427.

United States Court of Appeals, Sixth Circuit.

June 22, 2001.

Before GUY, NORRIS, and GILMAN, Circuit Judges.

PER CURIAM.

Plaintiff, Roger Howell, appeals from the district court's entry of summary judgment in favor of plaintiff's former employer, General Motors Corporation (GM), and his union, the United Automobile, Aerospace and Agricultural Implement Workers of America Local 969 (UAW Local 969). Plaintiff's hybrid § 301/fair representation claims alleged breach of contract by GM, *see* 29 U.S.C. § 185, and breach of the duty of fair representation by the union, *see Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Plaintiff argues that the district court erred in finding that the hybrid § 301/fair representation claims were barred by the applicable six-month statute of limitations. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158–59, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). After careful review of the record and the arguments presented on appeal, we find no error and affirm.

## I.

Roger Howell was employed at GM's Columbus Inland Fisher Guide Plant, now called the Columbus Delphi Interior Plant, from August 1968 until September 1990. The terms and conditions of his employment were governed by a national collective bargaining agreement between GM and the International UAW. In September 1990, plaintiff was working under a second last chance agreement that required a doctor's excuse for any absences.[1] GM terminated plaintiff's employment on September 20, 1990, after plaintiff missed two days of work without submitting a doctor's excuse. Plaintiff claimed that he did not provide an excuse because he had previously been told by a labor relations representative that GM would not accept any further doctor's excuses from him.

UAW Local 969 filed a grievance on plaintiff's behalf and, in November 1990, GM agreed to rehire him under a third last chance agreement. The settlement was conditioned upon plaintiff passing a drug test in March 1991. When plaintiff took the drug test, however, he tested positive for ethanol; a result that was not disputed. GM refused to rehire him. In April 1991, the union gave GM notice of the unadjust-

---

1. In May 1989, plaintiff's employment was terminated for falsifying company records. The union filed a grievance, which was settled by having plaintiff sign a last chance agreement requiring that he enroll in GM's alcohol recovery program, take a drug test on request, and avoid unreasonable absences and tardiness. That agreement was violated within a few months, but the grievance was again settled and plaintiff signed the second last chance agreement.

ed grievance and filed an appeal from the termination. The union continued to represent plaintiff until May 12, 1992, when the union withdrew the grievance.[2]

Plaintiff maintains that the union failed to send him notice that the grievance was withdrawn, which the union apparently does not contest. Nonetheless, plaintiff alleged in his second lawsuit that he spoke with a union representative in July 1992. At that time, plaintiff was told (1) that the union had been unable to secure a settlement, and (2) that "there was nothing further that [the union] could do to help Plaintiff be reinstated." Plaintiff did not appeal the union's action then, but filed suit against GM and the union in December 1992; less than six months after learning that the union would take no further action. When that lawsuit was voluntarily dismissed on November 22, 1993, the order stated that plaintiff intended to exhaust his internal union remedies. Plaintiff sent a letter appealing the union's withdrawal of his grievance to the International Executive Board (IEB) just days before the dismissal of this second lawsuit.[3]

The IEB processed the appeal, held a hearing, and denied the appeal on the merits in a decision issued on June 13, 1994. Nearly six months later, on December 8, 1994, plaintiff filed a third lawsuit alleging a hybrid § 301/fair representation claim against GM. Plaintiff voluntarily dismissed that action on February 22, 1996, after the defendant filed a motion for summary judgment. Five months later, on July 22, 1996, plaintiff submitted an appeal to the UAW's Public Review Board (PRB). Although considered untimely by the PRB,

plaintiff pressed for reconsideration and a hearing. After additional briefing, the PRB issued its decision denying the appeal on August 11, 1998.

Finally having exhausted his internal union remedies, plaintiff filed this action on October 9, 1998. Defendants each filed a motion for summary judgment on the grounds that the claims were barred by the statute of limitations. Finding that the six-month statute of limitations had run before plaintiff filed his first union appeal to the IEB in November 1993, the district court granted defendants' motions and entered judgment in their favor. This appeal followed.

## II.

We review the district court's grant of summary judgment *de novo*. *See, e.g., Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir.1997). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). To prevail against either defendant in this hybrid § 301 action, plaintiff must establish both that GM's termination of his employment was in breach of contract and that UAW Local 969's withdrawal of the grievance was in breach of the duty of fair representation. *See DelCostello*, 462 U.S. at 165, 103 S.Ct. 2281. This is the case regardless of whether the plaintiff sues his employer, his union, or both. *See id.* In *DelCostello*, the Court held that hybrid § 301 claims are to be governed by a six-month statute of limitations borrowed from § 10(b) of the National Labor Relations Act, 29 U.S.C.

---

2. While the union was pursuing this grievance, plaintiff filed his first lawsuit arising out of the termination. Filed in September 1991, the action was voluntarily dismissed in December 1991.

3. In the letter to UAW President Owen Bieber appealing the union's decision, plaintiff stated

that he had not been informed of a fourth-step appeal procedure. Plaintiff also stated that he was told during the IEB hearing in March 1994 that there were no further appeals. Plaintiff claims he requested a copy of the union's constitution three times, but never received one.

§ 160(b). *See Robinson v. Cent. Brass Mfg. Co.,* 987 F.2d 1235, 1238 (6th Cir. 1993).

■■■ The settled law in this circuit is that a hybrid § 301 claim accrues " 'when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.' " *Id.* at 1239 (citations omitted). The employee's claims accrue against the employer and the union at the same time; when the employee knew or should have known of the final action of the employer or the union, whichever occurs later. *Id.* at 1239. *See also Fox v. Parker Hannifin Corp.,* 914 F.2d 795, 803 (6th Cir.1990). When a union refuses to arbitrate a grievance, or otherwise withdraws representation, the claim arises when the plaintiff knew or should have known that the union had elected to proceed no further on his behalf. *See Schoonover v. Consol. Freightways Corp. of Delaware,* 49 F.3d 219, 221 n. 1 (6th Cir.1995).[4]

■■■ Plaintiff contends that a question of fact precluded entry of summary judgment. Specifically, plaintiff argues that there was a question as to when the limitations period began to run because the union failed to notify him that the grievance had been withdrawn. We disagree. While there was no evidence indicating that the union sent a notice to plaintiff after withdrawing the appeal of his grievance in May 1992, plaintiff knew or should have known in July 1992 that the union had elected to proceed no further on his behalf. *See, e.g., Gately v. Textron, Inc.,* No. 96–6208, 1997 WL 618825 (6th Cir. Oct.6, 1997) (unpublished decision) ("clock" started running when plaintiff knew union did not intend to represent her in a grievance against her employer, even though she filed a grievance after the limitations period had expired).

Although plaintiff commenced his second lawsuit within six months of when the limitations period began to run, the limitations period was not tolled because that lawsuit was voluntarily dismissed under Fed. R.Civ.P. 41(a). *Davis v. Smith's Transfer, Inc.,* 841 F.2d 139 (6th Cir.1988). *Accord Beck v. Caterpillar Inc.,* 50 F.3d 405 (7th Cir.1995). In *Davis,* the plaintiff filed a § 301 action within the six-month statutory period, voluntarily dismissed the action, and refiled the case less than a year later. This court held that the second action was not timely because (1) the filing of the first lawsuit had no effect on the limitations period since it had been voluntarily dismissed, and (2) the "Tennessee saving statute cannot be applied to defeat the federal policy underlying the six-month statute of limitations of § 10(b)." 841 F.2d at 140. In an earlier decision, this court explained:

> It is generally accepted that a dismissal without prejudice leaves the situation the same as if the suit had never been brought, and that in the absence of a statute to the contrary a party cannot deduct from the period of the statute of limitations the time during which the action so dismissed was pending. *Bomer v. Ribicoff,* 304 F.2d 427 (6th Cir. 1962); 5 *Moore's Federal Practice* ¶ 41.05[2].

*Wilson v. Grumman Ohio Corp.,* 815 F.2d 26, 27 (6th Cir.1987). In this case, neither the second lawsuit filed in December 1992, nor the third lawsuit filed in December 1994, served to toll the limitations period since they were both voluntarily dismissed under Rule 41(a).

---

4. Given this court's settled law on the issue, we do not discuss the cases plaintiff relies on from other circuits to suggest a contrary standard for determining when a hybrid § 301 action accrues. *See Stafford v. Ford Motor Co.,* 835 F.2d 1227 (8th Cir.1987); *Hester v. Int'l Union of Operating Eng'rs,* 818 F.2d 1537 (11th Cir.1987), *clarified on rehearing,* 830 F.2d 172, *vacated on other grounds,* 488 U.S. 1025, 109 S.Ct. 831, 102 L.Ed.2d 963 (1989).

Accordingly, we agree with the district court that the six-month statute of limitations period, which commenced in July 1992, expired before plaintiff brought his first internal union appeal in November 1993. A similar situation was addressed in *White v. White Rose Food,* 128 F.3d 110, 114–15 (2d Cir.1997). There, the court held that the plaintiffs' claims were barred by the 19–month delay between when the plaintiffs knew or should have known of the union's alleged breach of the duty of fair representation and when they first asked the union to file grievances on their behalf. The court found that the plaintiffs' "own lack of diligence" could not toll the limitations period, and that the plaintiffs' claims could not be revived by requesting that the union file a grievance after the limitations period had expired.

█ Plaintiff contends that the limitations period should not have started to run or should be tolled until he finally exhausted his internal union appeals in August 1998, just two months before this action was filed. Plaintiff correctly observes that a plaintiff is required to exhaust his internal union remedies or demonstrate that exhaustion may be excused. *See Clayton v. Int'l Union, UAW,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981); *Wagner v. Gen. Dynamics,* 905 F.2d 126 (6th Cir. 1990). As plaintiff also emphasizes, when a hybrid § 301 action is dismissed for failure to exhaust internal union remedies, the dismissal is without prejudice. While a dismissal without prejudice permits a plaintiff to refile the action, that does not mean the refiled action will necessarily be filed within the applicable statute of limitations.

We discussed the conflict between the policies underlying the six-month statute of limitations and the exhaustion requirement in *Dunleavy v. Local 1617, United Steelworkers,* 814 F.2d 1087, 1089 (6th Cir. 1987):

On the one hand, there exists the important national policy favoring a swift and uniform resolution of labor disputes. This is the same policy that is at the heart of the imposition of the relatively brief six-month time limit borrowed from Section 10(b) of the NLRA. On the other hand is the policy embodied in the exhaustion doctrine which encourages the self-governance of labor organizations through the development of internal procedures, providing an avenue for redress of grievances for its members....

Through the policy of exhaustion, unions are afforded the initial opportunity to correct their own internal problems through self-regulation and are encouraged to be responsible for their own actions. Prior union action may assist the court in resolving the controversy that may eventually come before it by interpreting union rules and defining or redefining the issues. The need for self-governance is most clearly in focus where, as in the present case, the complaint alleges wrongdoing in internal union affairs.

*Id.* at 1089–90 (citations omitted). Resolving this conflict, the court in *Dunleavy* held that the limitations period would be equitably tolled while the plaintiff pursued his internal union remedies even if the internal appeals were not mandatory under the collective bargaining agreement.

*Dunleavy* did not hold, however, that the existence of internal union remedies would in and of itself toll the limitations period until such time that the plaintiff finally exhausted those remedies. Rather, the court considered the circumstances of the case, including that the claims asserted in the internal appeal process were the same claims brought in the complaint; that the plaintiff was diligent in his efforts to pursue his claim through the union channels; and that the process was adequate and devised to redress his griev-

ances. *Id.* at 1090–91. Conversely, this court has held that the pursuit of completely futile internal remedies should not toll the statute of limitations applicable to a hybrid § 301 action. *See Robinson*, 987 F.2d at 1242–43.

We reject plaintiff's argument that the statute of limitations in this case should be equitably tolled until August 1998, as much as six years after the claims accrued. Plaintiff's claims are barred because he did not bring his first union appeal until November 1993, more than a year after he knew or should have known that the union would proceed no further on his behalf. Even after the IEB issued its decision in June 1994, plaintiff failed to seek review before the PRB until July 1996. During that two-year period, plaintiff waited nearly six months before filing the third lawsuit and another five months after it was dismissed before appealing to the PRB. To find that this action was timely filed would be to completely disregard the national policy favoring swift and uniform resolution of labor disputes, and to abandon any requirement that employees diligently pursue their available internal union remedies.[5]

Finally, plaintiff argues that the dilemma of whether to pursue internal union remedies or comply with the six-month statute of limitations leaves employees in a "Catch 22." That is, an employee must file suit within six months or have his claims barred by the statute of limitations, and if he files suit, the action will be dismissed for failure to exhaust internal union appeals. But, if he pursues the internal un-

ion appeals first, six months will elapse before he can exhaust those remedies and his claim will be barred by the statute of limitations. This very problem was addressed in *Dunleavy*, which held that the limitations period should be tolled while an employee diligently pursues his available internal union remedies. An employee wishing to bring a hybrid § 301 claim may not disregard either the limitations period or the exhaustion requirement, and compliance with one does not excuse the failure to satisfy the other.

**AFFIRMED.**

---

5. At one point, plaintiff asserts that he was diligent because there was no six-month period of time during which he was not pursuing *either* a lawsuit or an internal union remedy. Even if the lawsuits could have tolled the limitations period, the lawsuits and union appeals would only have suspended the running of the statute of limitations and would not entitle plaintiff to a new six-month period after each event. *See, e.g., United States v. Ibarra*, 502 U.S. 1, 4 n. 2, 112 S.Ct. 4, 116 L.Ed.2d 1 (1991) ("Principles of equitable tolling usually dictate that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped.")