**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0120n.06
Filed: February 12, 2009

No. 07-2559

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

RONALD J. KNIGHTEN,

    Plaintiff-Appellant,

           v.

GENERAL MOTORS CORP.; UAW LOCAL 598,

    Defendants-Appellees.

On Appeal from the United States District Court for the Eastern District of Michigan

_____/

**Before:    GUY and GRIFFIN, Circuit Judges; and WATSON, District Judge.[*]**

**MICHAEL H. WATSON, District Judge.**    Plaintiff Ronald J. Knighten ("Knighten") appeals the district court's order granting summary judgment for Defendants General Motors Corporation ("GMC") and UAW Local 598 ("Local 598") on his hybrid § 301 claim under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Concluding that Knighten failed to exhaust his administrative remedies, we affirm.

**I.**

**A.    Summary of Events**

In 1979, Knighten began working as an hourly production worker at the GM Flint Truck Assembly Plant. With the exception of a two-month period in 1985, Knighten has

_____

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

been a member of Local 598 his entire career with GMC. In 1985, Knighten began an apprenticeship to become a journeyman pipefitter. He completed the apprenticeship in 1988 and worked as a journeyman pipefitter in the plant ever since.

As a journeyman pipefitter, Knighten works throughout the plant. This position requires Knighten to possess an in-plant driver's license and operate various types of equipment in the plant. Every person at GMC who possesses an in-plant driver's license is required to renew it every three years. The renewal process requires an employee to take a physical exam, including an eye exam, and to take refresher training regarding the safe operation of mobile equipment.

In October 2005, GMC required Knighten to take a physical exam, including an eye exam. Knighten failed the eye exam. Upon failing the eye exam, GMC prohibited Knighten from driving in-plant vehicles. He was still able to work overtime because he had an appointment with his eye doctor on November 21, 2005. Additionally, GMC provided Knighten with the opportunity to retake the test after consulting his eye doctor and correcting his vision problem.

Knighten suffers from keratoconus, a degenerative, non-inflammatory disorder of the eye in which structural changes within the cornea cause it to thin and change to a more conical shape than its normal gradual curve. In most cases, corrective lenses permit a person to continue to drive legally and function normally. Fitting contact lenses for this condition

is delicate and time-consuming and may require a number of visits before the fit and prescription are correct.

On November 24, 2005, Knighten brought a medical form to the GMC medical office which purported to be approval by his personal physician to drive equipment in the plant. Knighten, however, neither allowed GMC's medical office to make a copy of the form nor would he take another eye exam. As a result, on November 27, 2005, GMC deferred Knighten from overtime until he passed the eye exam.

Local 598 representatives repeatedly urged Knighten to either give GMC permission to review his medical records or allow GMC's doctor to talk with his eye doctor. Knighten, however, was not receptive to the advice.

The evening of December 5, 2005,[1] Knighten was told to report to Labor Relations to meet with his supervisor and a Labor Relations representative. At the meeting, they deferred Knighten from working both straight time and overtime until he resolved his vision issue. The deferral was not disciplinary as he was able to return to work as soon as he either cooperated with GMC in providing information regarding his medical condition or he passed a vision test.

After the meeting, Earvin Burnom, the district committeeman, told Knighten that he would not file a grievance on Knighten's behalf because he refused the various requests for

---

[1]Knighten's deposition testimony states December 5, 2005, and the notes of the district committeeman, Earvin Burnom, indicate December 6, 2005. The "confusion" is due to the fact the meeting occurred close to midnight, December 6, 2005.

GMC to speak with his eye doctor. As such, Burnom felt the grievance would not be justified.

Earlier on December 5, 2005, Knighten visited his eye doctor for a contact lens trial. He returned to his eye doctor on December 12, 2005, for a contact lens collection. His lenses, however, had not arrived. He returned for a follow-up visit on December 19, 2005, at which time new contact lenses were ordered, with an anticipated two to three week delivery date. Knighten again went to his eye doctor on December 23, 2005, for a contact lens collection and was told to return in three weeks.

On December 24, 2005, Knighten brought a letter, dated December 22, 2005, from his eye doctor to the GMC medical department. The letter stated Knighten was in the process of being fitted with new contact lenses to help resolve his vision issue. Additionally, it stated that Knighten met all state and federal requirements for a full motor vehicle license and provided his test scores from his November 21, 2005 eye exam. This was the first time the test scores from the November 21, 2005 exam were provided. The test scores in the letter, however, do not match the test scores in his medical records for November 21, 2005.

On December 26, 2005, the GMC medical department gave Knighten an eye exam, but he was unable to pass it. On January 3, 2006, he was again given the exam, this time wearing his new contact lenses, and again he did not pass it. At that point in time, Knighten made an appointment with GMC's physician for January 9, 2006.

On January 9, 2006, after reviewing the letter from Knighten's treating eye doctor and giving him a reading test, the GMC doctor determined Knighten passed his physical and renewed his in-plant license. Knighten returned to work that evening.

**B.      UAW Appeal Process**

On March 11, 2006, Knighten mailed an appeal to Local 598's Recording Secretary contesting Local 598's refusal to file a grievance concerning his deferral from work. Knighten made no inquiries as to when the appeal would be considered. The appeal was scheduled to be heard at the next regularly scheduled Local 598 membership meeting. Knighten knew Local 598 held its meeting on the third Sunday of every month. On March 19, 2006, the meeting at which the appeal was to be heard, Knighten failed to appear to present his case to the membership.

Local 598 notified Knighten, by letter dated April 19, 2006, that his appeal was denied by the local membership. Knighten then filed an appeal with the International Union, United Automobile Aerospace & Agricultural Implement Workers of America ("International Union") on April 19, 2006. After filing the appeal with the International Union, Knighten did not take any further steps to exhaust the UAW Constitution's appeals procedure. Instead, Knighten filed a Complaint in federal court on June 2, 2006.

On June 28, 2006, the International Union notified Knighten he needed to provide additional information in order to perfect his appeal. Knighten did not respond to the International Union's letter and never provided any further information to the International

Union. It is undisputed that Knighten never perfected his appeal to the International Executive Board ("IEB") and never appealed to the UAW Convention Appeals Committee ("CAC") or the Public Review Board ("PRB") under the International Union Constitution.

**C.      UAW/GMC Contract**

The International Union and GMC have been parties to a series of National Agreements for decades. The National Agreement covers UAW-represented employees at plants operated by GMC throughout the United States and provides governing terms and conditions of employment.

The 2003 National Agreement contained a grievance and arbitration procedure. Local 598 informed Knighten that its position was the deferral from work was not a violation of the CBA and, therefore, Local 598 would not process a grievance over the deferral.

**D.      UAW Constitution**

Article 33, Section 1 of the UAW Constitution permits appeals of "any action, decision or penalty by" . . . "[a] Local Union, or any of its units, committees, officers, committeepersons or stewards . . . ." Article 33, Section 5 provides:

> It shall be the duty of any individual or body, if aggrieved by any action, decision or penalty imposed, to exhaust fully the individual or body's remedy and all appeals under this Constitution and the rules of this Union before going to a civil court or governmental agency for redress.
>
> The steps in the appeal process are as follows:
>
> 1.      Local Union's membership;
> 2.      IEB;
> 3.      CAC or PRB.

The IEB, PRB and CAC are authorized to order the UAW to pay money damages to an aggrieved member or order the processing of a grievance which was wrongfully disposed.

### E.   District Court Decision

On November 30, 2007, the district court issued its opinion and order granting GMC's and Local 598's motions for summary judgment. The district court held that summary judgment was appropriate due to Knighten's failure to exhaust his administrative remedies prior to filing his lawsuit. The district court further held that, even if all of Knighten's allegations of hostility on the part of Local 598 were accepted as true, Knighten failed to demonstrate that exhaustion was futile because he failed to present any evidence of hostility on the part of the International UAW or PRB.

The district court also held that Knighten failed to argue that the intra-union appeal procedures would be inadequate to award him the relief he sought or that exhaustion would unreasonably delay his ability to obtain a judicial hearing on the merits. The district court did not reach Knighten's arguments that GMC breached the CBA or that Local 598 breached its duty of fair representation. This appeal followed.

## II.

We review a grant of summary judgment *de novo*. *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 893 (6th Cir. 2006). The moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law."   Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). We view factual evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006).  Summary judgment is not appropriate if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 251-52.

Knighten asserts a hybrid § 301 claim under the LMRA against Local 598 and GMC. An employee seeking relief pursuant to § 301 is required "to exhaust any exclusive grievance and arbitration procedures established by [the collective bargaining] agreement before he may maintain a suit against his union or employer . . . ." *Clayton v. Automobile Workers*, 451 U.S. 679, 681 (1981) (citations omitted).  Nonetheless, an employee does not have to exhaust internal union procedures if doing so is futile. *Ryan v. General Motors Corp.*, 929 F.2d 1105, 1110 (6th Cir. 1991).  The *Clayton* court set forth three relevant factors, any one of which could excuse the employee's failure to exhaust:

1.      whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim;

2.      whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and

3.      whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*Clayton*, 451 U.S. at 549. Further, the Sixth Circuit mandates "a clear and positive showing of futility before excusing a failure to exhaust . . . ." *Cotter v. Daimler Chrysler*, 87 F.Supp.2d 746, 752 (E.D. Mich. 2000) (quoting *Miller v. Chrysler Corp.*, 748 F.2d 323, 326 (6th Cir. 1984)).

It is undisputed that Knighten did not exhaust the internal union remedies available to him. He argues, however, it would have been futile for him to do so because of Local 598's hostility toward him. Assuming Local 598 was hostile toward Knighten, the evidence does not establish a clear and positive showing of futility which would excuse his failure to exhaust. With respect to hostility, it is not enough that an employee demonstrate hostility toward him by the local union. Instead, he must also demonstrate hostility toward him by the International UAW and PRB. *Monroe v. International Union*, *UAW*, 723 F.2d 22, 25 (6th Cir. 1983); *Wagner v. General Dynamics*, 905 F.2d 126, 128 (6th Cir. 1990). Knighten fails to demonstrate that Local 598, International UAW and PRB were all so hostile to him that he could not hope to obtain a fair hearing. To the contrary, Knighten admits he is unaware of whether members of the International UAW and PRB harbored animosity toward him. (J.A. 514, 1250-1251). Moreover, Knighten filed his lawsuit on June 2, 2006, prior to receiving the International UAW's June 28, 2008 letter requesting additional information regarding his appeal. (J.A. 238-243, 1252-1254). As such, Knighten fails to present a clear and positive showing of futility which would excuse his failure to exhaust.

Knighten does not assert arguments with respect to the remaining two factors. Thus, the record does not demonstrate a clear and positive showing of futility sufficient to excuse Knighten's failure to exhaust the internal union remedies available to him.

Finally, Knighten argues he should be excused from exhausting his internal union remedies because he was in a "Catch 22" situation between the six-month statute of limitations deadline and the exhaustion requirement. This Court, however, held this argument is without merit:

> Finally, plaintiff argues that the dilemma of whether to pursue internal union remedies or comply with the six-month statute of limitations leaves employees in a "Catch 22." That is, an employee must file suit within six months or have his claims barred by the statute of limitations, and if he files suit, the action will be dismissed for failure to exhaust internal union appeals. But, if he pursues the internal union appeals first, six months will elapse before he can exhaust those remedies and his claim will be barred by the statute of limitations. This very problem was addressed in *Dunleavy* [*v. Local 1617, United Steelworkers*, 814 F.2d 1087, 1089 (6th Cir. 1987)], which held that the limitations period should be tolled while an employee diligently pursues his available internal union remedies. An employee wishing to bring a hybrid § 301 claim may not disregard either the limitations period or the exhaustion requirement, and compliance with one does not excuse the failure to satisfy the other.

*Howell v. General Motors Corp.*, 19 Fed. Appx. 163, 165-166 (6th Cir. 2001),

Accordingly, the district court did not err in granting summary judgment to Local 598 and GMC. Knighten did not exhaust his internal union remedies and the evidence does not support a finding that to do so would have been futile. Lastly, Knighten is not excused from exhausting his internal union remedies because of his concern regarding the statute of limitations as it was tolled while he was diligently pursuing his internal union remedies.

Consequently, the Court will not address whether GMC breached the CBA or whether Local

598 breached its duty of fair representation.

**AFFIRMED.**